JOSEPH S. BAUM MERCANTILE COMPANY, A Corporation, Respondent, v. SAM LEVIN, CHARLES R. BARNARD and WILLIAM NEWTON, Appellants.

Springfield Court of Appeals, March 20, 1915.

1. APPEAL AND ERROR: Equity Case: Admission or Exclusion of Evidence: Harmless Error. The admission or exclusion of evidence in an equity case will not work a reversal of the finding sustained by competent evidence.

2. INJUNCTIONS: Unfair Competition: Laches. Where defendant, a competing merchant, represented and continued to represent that his store was plaintiff's store for the purpose of inducing customers and prospective customers to believe that they were purchasing such goods from plaintiff, a delay of two years by plaintiff before he sought injunctive relief was not. laches, especially in the absence of any intervening circumstances.

3. ———: ———: Equitable Relief. Though plaintiff might have an action at law against a rival merchant because of unfair competition for each instance of such unfair competition, yet he need not resort to law alone for damages, but may obtain equitable relief by injunction to prevent a multiplicity of actions at law. [Sec. 2534, R. S. 1909.]

4. UNFAIR COMPETITION: What is: Right of Action. Actionable, unfair competition consists in any conduct, the natural and probable tendency and effect of which is to deceive the public so as to pass off the goods or business of one person for that of another.

5. ———: Equitable Relief: Clean Hands. Injunction by a merchant to restrain a rival merchant from unfair competition. Plaintiff's manager had learned that certain female customers had been insulted while in defendant's store, thus causing blame to rest on plaintiff's store therefor. The fact that plaintiff's manager sent a girl into defendant's store on a wager that she would be insulted held not such misconduct as would bar plaintiff's right to enjoin the unlawful practices of defendant.

6. ———: ———: ———. Nor would the fact that plaintiff suing for equitable relief purchased a dinner for a witness during the trial under the facts detailed in this instance be such conduct as would justify denial of relief.

7. ————: **Injunctions: Plaintiff's Misconduct.** Plaintiff obtained a temporary injunction against a rival merchant to restrain him from unfair competition. Though his conduct subsequent to obtaining such temporary writ and prior to final hearing, in advertising the result of the suit and villifying his rival was reprehensible and might have properly subjected him to contempt of court, yet it would not deprive him of equitable relief where the acts were not connected with the subject-matter of the suit and the plaintiff was otherwise entitled to the relief sought.

8. **INJUNCTIONS: Costs: How Apportioned.** Suit for injunctive relief. On several of the issues covered by the temporary injunction plaintiff did not obtain a permanent injunction. Several witnesses were used by plaintiff whose testimony was useless on the issues as to which the permanent injunction was given. Under Sec. 2266, R. S. 1909, the court properly divided the costs equally.

Appeal from Jasper County Circuit Court.—*Hon. Ray Bond,* Special Judge.

AFFIRMED.

*I. J. Ringolsky, J. H. Spurgeon, C. V. Buckley* and *Haywood Scott* for appellants.

(1) Plaintiff's petition and proof makes at most, only a case of constructive, implied and indirect defamation of plaintiff, its business and its goods and, under the decisions of the Supreme Court of Missouri and the line of authorities followed by our Supreme Court, affords no ground for equitable relief. Consumers Gas Co. v. Kansas City Co., 100 Mo. 507; Flint v. Hutchinson Swope Burner Co., 110 Mo. 501; Clothing Co. v. Watson, 168 Mo. 133; Boston Diatite Co. v. Florence Mfg. Co., 114 Mass. 69; Whitehead v. Kitson, 119 Mass. 484; Edison v. Thomas C. Edison, Jr., 128 Fed. 957; Vissar College v. Loose-Wiles Co., 197 Fed. 982; Citizens Co. v. Montgomery Co., 171 Fed. 553; High on Injunctions (4 Ed.), sec. 1093. (2) Plaintiff had an adequate remedy at law. Lambert v. Drug Co., 238 Mo. 409; Milling Co. v. Hanebrink, 247 Mo. 221, 222; Con-

rad v. Uhrig Brewing Co., 8 Mo. App. 285. (3) The plaintiff came into this court of equity with unclean hands. It has done iniquity and wrong towards the defendants herein. Globe Newspaper Co. v. Commonwealth, 74 N. E. 682; People v. News Times Pub. Co., 84 Pac. 912-956; Herald Pub. Co. v. Lewis, 129 Pac. 624; High on Injunction (4 Ed.), sec. 1094; McVey v. Bundel, 144 Pa. St. 235, 13 L. R. A. 377; Pomeroy's Equity Jurisprudence (3 Ed.), sec. 397-404; Adriance Platt & Co. v. Nat'l Harrow Co., 121 Fed. 827; Farquor Co. v. Harrow Co., 102 Fed. 714; Hearton v. McKee, 73 Fed. 556; Primm v. White, 165 Mo. App. 606; Little v. Cunningham, 116 Mo. App. 549. (4) There must be deception in addition to an intent to deceive in all cases of unfair competition. Allen B. Wrisley Co. v. Iowa Soap Co., 122 Fed. 797-798; Kann v. Diamond Steel Co., 89 Fed. 706; N. K. Fairbank Co. v. R. W. Bell Mfg. Co., 77 Fed. 876. (5) Plaintiff was guilty of laches. 5 Pomeroy's Equity Jurisprudence (3 Ed.), sec. 36; Badger v. Badger, 2 Wall. 95, 17 L. Ed. 836; Potts v. Alexander, 118 Fed. 885; Gibson v. Herriott, 55 Ark. 85, 29 Am. St. 17, 17 S. W. 589; Wetzel v. Minn. Ry. Transfer Co., 65 Fed. 23, 12 C. C. A. 490, 27 U. S. App 594; Lant v. Manley, 71 Fed. 7; Wilcoxon v. Wilcoxon, 199 Ill. 244, 65 N. E. 229.

*Spencer, Grayston & Spencer* and *Sapp & Wilson* for respondent.

(1) The wrongs complained of in the petition were unfair competition. 38 Cyc. 756-762; Weistock, Lubin & Co. v. Marks, 42 Pac. (Cal.) 142; Grocers Journal Co. v. Midland Pub. Co., 127 Mo. App. 366, 367. (2) Unfair competition may be restrained by injunction. 2 High on Injunction (4 Ed.), secs. 1065a, 1065b, 1065c, 1065d, 1066, 1068 and note 54, 1069 and 1070; Pope-Turnbo v. Bedford, 147 Mo. App. 692; McCann v. Anthony, 21 Mo. App. 83; 38 Cyc. 794-795; Sec.

2534, R. S. 1909. (3) The maxim that he who seeks equity must do so with clean hands applies only to conduct related to the subject of litigation. Hingston v. Montgomery, 121 Mo. App. 462; Primean v. Granfield, 180 Fed. 852; Mason v. Carrothers, 74 Atl. (Me.) 1037; Cunningham v. Pettigrew, 169 Fed. 344; Lord v. Smith, 71 Atl. (Md.) 433; Chute v. Wisconsin Chemical Co., 185 Fed. 118; Demster v. Boxmyer, 79 Atl. (Pa.) 808; Eunean v. Rieger, 105 Mo. 682; Williams v. Beatty, 139 Mo. App. 174, 175; Johnson v. Ewald, 82 Mo. App. 286. (4) Injunction is the proper remedy. 3 Pomeroy's Equity Jurisprudence (2 Ed.), secs. 1357, 1358; Quartz Hill, etc. Co. v. Beall, L. R. 20 Ch. Div. 501, 507 (libel on a corporation); Halsey v. Brotherhood, L. R. 19 Ch. Div. 386, 15 Ch. Div. 514 (slander of title to a patent right); Dicks v. Brooks, L. R. 15, Ch. Div. 22 (same); Thomas v. Williams, L. R., 14 Ch. Div. 864, 871, 872 (libel injurious to a trade); Thorley's Cattle Food Co. v. Massam, L. R., 14 Ch. Div. 763, reversing L. R., 6 Ch. Div. 582 (same; a leading case); Hill v. Davies, 21 Ch. Div. 798; Herman Loog v. Bean, 26 Ch. Div. 306; Hayward v. Hayward, 34 Ch. Div. 198; Liverpool etc. Ass'n v. Smith, 37 Ch. Div. 170; Sherry v. Perkins, 147 Mass. 212, 9 Am. St. 689. (5) The doctrine of unclean hands cannot be applied to plaintiff in this case. The doctrine means that the plaintiff when asking the court of equity to relieve him from a situation, must not by his own conduct have brought about by fraud the situation from which he asks to be relieved. Pomeroy's Equity Jurisprudence, sec. 400; Freeman v. Sedgwick, 46 Am. Dec. 650; Stewart v. Inglehart, 28 Am. Dec. 202; and see all the cases collected in note 3 American State Report, 727. (6) On the subject of laches: The acts complained of were continuous. There was no showing that defendants lost evidence or other advantage by plaintiff's postponement of action. Certainly, they lost no rights by reason of delay. 16 Cyc. 152.

FARRINGTON, J.—The plaintiff, a corporation of which the capital stock was practically all owned by Joseph S. Baum, and the defendant Levin, are rival merchants with stores located on Main street in the city of Joplin, Mo. Defendants Newton and Barnard are clerks of Levin. Plaintiff's store occupies two rooms, numbered 810 and 812, separated by a stairway which leads up to a hotel on the second floor. Just north of and adjoining plaintiff's north room is the defendant's (Levin's) store, occupying one room, numbered 808. Plaintiff carried, principally, a line of dry goods; defendant, principally clothing and shoes; but both sold certain merchandise of the same general class. The photographs introduced in evidence show that the display windows of the two concerns somewhat resemble. Plaintiff advertises extensively in the newspapers, by handbills, and by large signs on the store front bearing the name ''Baum's.'' Defendant does not advertise in the newspapers and has very modest signs on his store front.

Plaintiff in the petition charges that by reason of its extensive advertising many persons who had read its advertisements would start to its store to make purchases; that the defendants Levin, Newton and Barnard would stand in front of their store and when such persons came along they would be told by defendants that their store, numbered 808, was Baum's; that some who went into defendants' store without such an invitation and inquired if it was Baum's were told and led to believe by the defendants that it was; that many of plaintiff's customers had thereby been induced to make purchases in store numbered 808 which was owned by Levin, and that they were led to believe by defendant Levin and his employees that they were in Baum's store and that they were buying Baum's goods. It is charged that this practice had been going on for some two years and that by reason thereof plaintiff had

been caused much loss which was incapable of admeasurement and that the law would not afford a proper and adequate remedy. The petition concludes with a prayer for injunctive relief, asking that defendants and each of them be restrained "from representing or claiming that the store owned and maintained by the said Sam Levin is this plaintiff's store or that the goods therein kept for sale are the goods advertised for sale by this plaintiff, and from inducing customers to purchase said goods under such mistaken belief, and from soliciting, calling or otherwise attracting prospective purchasers away from plaintiff's said store, and from insulting and annoying the manager and other agents and employees of the plaintiff by words, epithets, gestures, grimaces, or otherwise."

A temporary restraining order was granted.

The defendants filed a general demurrer, but before going to trial filed a general denial and proceeded on the theory that the charges made by the plaintiff were untrue and without foundation. They made no claim whatever that they had a legal right to do what plaintiff charges them with doing, but simply denied that they did the acts they were accused of.

A great mass of evidence was introduced by both sides, requiring two large printed volumes of thirteen hundred pages to record the proceedings of the trial court. After some ten or twelve days, occupied in taking testimony and wrangling on the part of the attorneys, the court granted a perpetual injunction, the order being as follows: "It is therefore ordered, adjudged and decreed by the court that the temporary injunction heretofore granted herein be made permanent to the extent herein specified and that the above-named defendants and each of them, their agents, servants and employees are hereby perpetually enjoined and restrained from representing or claiming that the store at No. 808 Main street in the city of Joplin, Jasper county, Missouri, is the store of plaintiff and that

the defendants and each of them, their agents, servants and employees are hereby perpetually enjoined and restrained from directly or indirectly, by acts, words, gestures, looks or signs leading or inducing customers or prospective customers to believe that the said store at No. 808 Main street in the city of Joplin, Jasper county, Missouri, owned and maintained by the defendant, Sam Levin, is the store of the plaintiff, the Joseph S. Baum Mercantile Company, or that the goods in said store at No. 808 Main street are the goods of the said plaintiff or the goods mentioned in advertisements or other publications published by the plaintiff; and the court does further order and decree that the costs of this suit be taxed against the defendants for which let execution issue therefor.''

It would be impracticable and it is unnecessary to summarize or discuss the evidence of about one hundred witnesses who testified in this case. We have studied the entire record and conclude from the evidence that the plaintiff has overwhelmingly sustained the charges that the defendant Levin and his employees joined with him as defendants were fraudulently representing their store at No. 808 Main street as that of the plaintiff for the purpose of selling their goods to prospective customers believing the same to be the plaintiff's goods, and by such misrepresentations were inducing many purchases on the part of persons who had started out to trade with the plaintiff and who thought they were trading with plaintiff.

There are thirty-seven points in appellants' brief alleging errors, many of which go to the action of the court in admitting or excluding testimony, and granting that many of these are well taken, there yet remains enough in the record to convince any one that the trial court found the issues of fact for the right party. We have recently noted the rule that the admission or exclusion of evidence in an equity case will rarely work

a reversal. [Barron v. H. D. Williams Cooperage Co., 171 S. W. 683.]

Appellants contend that plaintiff should be denied relief because of laches. To this, we cannot agree. Appellants do not claim to have a right to do the acts charged and proven; nor do we see how on the principle of laches they could ever have acquired such right. They were certainly not misled by plaintiff's reticence for the period of two years this course of conduct was going on. Besides, there were no countervailing circumstances intervening and the plaintiff's right to have such conduct cease is clear. [Short v. Thomas, 178 Mo. App. l. c. 419, 420, 163 S. W. 252; Cantwell v. Crawley, 188 Mo. 44, 86 S. W. 251; Connecticut Mut. L. Ins. Co. v. Carson, 186 Mo. App. 221, 172 S. W. 69.]

The record discloses that the defendants were persisting in their unfair methods for a period commencing two years before and extending down to the time of the institution of this suit, and plaintiff offered to show (but was not permitted by the court to do so) that even after the filing of the suit the defendants continued their methods of unfair competition.

Appellants cite some cases where plaintiffs have brought suits at law and recovered some damages for wrongs somewhat similar to those committed here. It is no doubt true that plaintiff could have maintained an action at law for each offense of the defendants; but this fact does not preclude plaintiff from injunctive relief, because, although it might recover some damages, it is by no means conclusive that the amount recovered would be adequate to compensate plaintiff for the wrongs committed. Plaintiff is entitled to go into equity unless it has an *adequate* remedy at law. Section 2534, Revised Statutes 1909, is broad enough to cover plaintiff's case. Plaintiff proved some twenty or thirty instances where prospective purchasers were led to believe by the conduct of the defendants that they were dealing with the plaintiff when in fact they

were not, and this, too, after plaintiff had made a request that such practices cease. We can see no reason why the plaintiff should be denied injunctive relief. There is no distinction discernible to us that would render plaintiff any the less entitled to such relief than an owner of real estate who is given injunctive relief to restrain continuous trespasses even though the wrong may not be irreparable and the wrongdoer solvent. It is held in Palmer v. Crisle, 92 Mo. App. l. c. 513, as follows: "The law of to-day does not require that a person in plaintiff's situation shall submit to the stripping of his timberland of its forest trees, and then attempt to make his loss good by action for damages. The nature of the property involved and the inconvenience of suing for continuous trespasses, as charged in this case, constitute a basis for equitable relief, long recognized in this State, under the statute governing the use of the writ of injunction." [See, also, Barron v. H. D. Williams Cooperage Co., 171 S. W. l. c. 687, and cases cited.]

The ear of a chancellor needs no trumpet to hear nor is he lacking in power to grant relief to a plaintiff in such condition—if for no other reason, to avoid a multiplicity of suits. But there is no dearth of authority holding that equity will restrain unfair competition and that is what defendants' acts amounted to here. [See, 2 High on Injunctions (4 Ed.), secs. 1065 to 1070 inclusive; Pope-Turnbo v. Bedford, 147 Mo. App. 692, 127 S. W. 426; McCann v. Anthony, 21 Mo. App. 83; Grocers Journal Co. v. Midland Publishing Co., 127 Mo. App. 356, 105 S. W. 310; Weinstock, Lubin & Co. v. Marks (Cal.), 42 Pac. 142; 38 Cyc. 756 to 762; Juan F. Portuondo Cigar Mfg. Co. v. Vicente Portuondo Cigar Mfg. Co. (Pa.), 70 Atl. 968; Lavanburg v. Pfeiffer, 52 N. Y. Supp. 801; Weber Medical Tea Co. v. Kirschstein, 101 Fed. 580.] The following definition is given in 38 Cyc. 756-758: "Unfair competition consists in passing off or attempting to pass off, upon the

public, the goods or business of one person as and for the goods or business of another. It consists essentially in the conduct of a trade or business in such a manner that there is either an express or implied representation to that effect. And it may be stated broadly that any conduct, the natural and probable tendency and effect of which is to deceive the public so as to pass off the goods or business of one person as and for that of another, constitutes actionable unfair competition. The definition is comprehensive enough to reach every possible means of effecting the result. Unfair competition as thus defined is a legal wrong for which the courts afford a remedy. It is a tort and a fraud. The basic principle is that no one has a right to dress up his goods or otherwise represent them in such a manner as to deceive an intending purchaser and induce him to believe he is buying the goods. of another.''

The prohibition against one using the trade-mark of another rests on the broad ground of unfair competition as it is only a specialized branch of the general doctrine. [38 Cyc. 762.] And it would be useless at this place to cite any of the numerous cases holding that a court of equity can enjoin the unlawful use of a trade-mark where the same has become the property right of its lawful user. And yet, according to appellants' argument in attempting to apply the rule that a court of equity cannot enjoin libel and slander, such court would be powerless to restrain the unlawful use of a trade-mark because very often it consists of printed words.

We cannot agree with appellants' contention that at most plaintiff makes out a case of only constructive, implied and indirect defamation of its business. An examination of the cases cited in appellants' brief on this point will show that the facts therein discussed are entirely different from those presented here. For instance, in the case of Vassar College v. Loose-Wiles.

Biscuit Co., 197 Fed. 982, we find on page 992, the following: "This statement was not made in the sense of denying the right of one person to use the surname of another, and follows a previous announcement that a man may in some cases be denied the right to use his own name under circumstances which would result in unfair competition in trade. The rules governing competition have, of course, no application to the matter here under inquiry." In the case of Citizens' Light, Heat & Power Co. v. Montgomery Light & Water Co., 171 Fed. 553, l. c. 562, the following language is used: "At common law a trader, or person in other calling, in order to get another man's customers, could use any means not involving violation of the criminal laws, or amounting to 'fraud,' . . ." The acts of the defendants in the case before us are clearly fraudulent, not only on the customers but on the plaintiff, and hence fall within the definition of unfair competition at common law. The case of Marx & Haas Jeans Clothing Co. v. Watson, 168 Mo. 133, 67 S. W. 391, had in it no element of competition. And the other cases cited show that the wrong complained of was a false and malicious attack on the title or right to the property which the plaintiffs in those cases were attempting to protect. There is no such condition in the case under consideration as the defendants made no claim that the Baum company's goods did not belong to it or that the Baum company had no right to sell them or that such goods were inferior or an infringement on defendants' goods. On the other hand, the defendants were claiming that their goods were Baum's goods —in no sense a slander of property but a fraudulent representation of ownership in that they were claiming that the goods in their store were in fact Baum's goods, and such representation was made for the purpose of passing off the defendants' goods as and for those of the plaintiff.

Appellants also insist that plaintiff should be denied equitable relief because it comes into court with unclean hands and has done iniquity and wrong toward these defendants.

The evidence does not sustain the charge made by appellants that plaintiff did not sue in good faith for the purpose of putting a stop to the unfair methods that were used in fraudulently representing that Levin's store was Baum's store.

No doubt the libel suit brought by Levin did tend to hasten the beginning of this suit; yet, why should that prevent plaintiff from stopping defendants' wrongs toward it? Actions of this character are never attended with the best of feeling between the litigants.

It is also charged that plaintiff's hands are unclean because its manager sent a girl into defendants' store on a wager that she would be insulted. The record discloses that before doing this it had come to the ears of plaintiff's manager that two other women (who were placed on the stand and testified to the same) who had gone into defendants' store and who while there were led to believe it was Baum's store, had had insulting remarks made to them before leaving by some of defendant Levin's employees; the natural result of which would be that Baum's store would be blamed. Such information having come to plaintiff's manager, we would not feel disposed to deny it relief, because, perchance, he did undertake to make some evidence against those who were purposely wronging the plaintiff. Saints do not get into equity either as plaintiffs or defendants; courts must deal with men, and must in passing on their conduct take into consideration their environment and provocations.

For the same reason we do not think the plaintiff should be denied relief which the trial court granted because it sent several persons into Levin's store to see if it would be represented to them by the defendants that their store was Baum's store.

The proof fails to convince us that plaintiff's manager attempted to bribe any witnesses, or that he attempted to have the stenographer who took some depositions do anything wrong in connection therewith.

Nor do we think there was anything wrong in plaintiff's manager paying for a dinner for the witness Ben Jealnis during the time the trial was in progress. The witness was an old man and when the court informed him to come back after dinner at a certain time he said if they wanted him back by that time some one would have to buy his dinner down town. Baum volunteered to take him. In passing, we will say that the testimony of this witness bears every evidence of honesty and truthfulness.

It is next insisted that plaintiff's hands are unclean because it caused to be published in newspapers of Joplin, and on the screens of motion picture theaters, and on handbills, certain charges that defendants were criminals, thieves, pirates, bodysnatchers, receivers of stolen goods, and insulters of women.

A number of the original exhibits are brought here and disclose that before and after the commencement of this suit and in fact down to within a short time before the trial the plaintiff was running large advertisements in the newspapers in which plaintiff was publishing the fact that it was being mistreated by the defendants, and calling attention to the fact that it had procured a temporary injunction, and publishing what it thought was a resume of testimony certain witnesses it had procured would give, and calling on anyone who could furnish it evidence of unfair methods used by the defendants—all of which is designated by defendants as advertising for witnesses.

No court should stamp with approval any such methods as were employed by plaintiff in its advertising campaign. When litigants have reached the point of calling on the courts of the land to adjust their differences, they should abide their time until the courts

have settled the issues in the decent and orderly manner prescribed by law. The conduct of plaintiff's manager was reprehensible, and to a great extent, in our judgment, was for the purpose of advertising his store; and, furthermore, his conduct in this particular made him subject to punishment for contempt had the trial judge been moved to take action in the matter.

This does not, however, estop the plaintiff from obtaining the relief prayed for. The cases cited by the appellants, to-wit, Globe Newspaper Co. v. Commonwealth (Mass.), 74 N. E. 682; People ex rel. Attorney-General v. News-Times Pub. Co. (Colo.), 84 Pac. 912, 956; and Herald-Republican Pub. Co. v. Lewis (Utah), 129 Pac. 624, are all cases where the court was dealing with contempt proceedings and not with the question of whether the conduct would bar relief of an equitable nature. The case of Becker v. Berlin Beneficial Society (Pa.), 27 Am. St. Rep. 624, holds that the party seeking to enjoin the use of a trade-mark was not entitled to use a trade-mark at all, and further, that the trade-mark which the court was asked to protect contained matter that a court of equity would not wish to stamp with its approval. In that case the very subject-matter of the action contained that which stained the hands of the plaintiff. The case does not hold that if the plaintiff had been entitled to a trade-mark and the trade-mark had been one that a court of equity would protect the conduct of the plaintiff both prior and subsequent to the beginning of the suit in connection with the trade-mark would have barred recovery. It is held in the case of Hingston v. Montgomery, 121 Mo. App. l. c. 462, 97 S. W. 202, that the clean hands' doctrine applies only to conduct relating to the subject of litigation. By restraining the defendants from continuing their unlawful conduct the court does not thereby approve plaintiff's conduct with reference to its publications in this regard. The rule does not go to the extent of barring a plaintiff because of illegal

transactions on his part performed merely in connection with the subject-matter of the suit; his conduct must have been with reference to the matter in litigation. [Mason v. Carrothers (Me.), 74 Atl. l. c. 1037; Yale Gas Stove Co. v. Wilcox (Conn.), 25 L. R. A. l. c. 105; Cunningham v. Pettigrew, 169 Fed. l. c. 344; Chute v. Wisconsin Medical Co., 185 Fed. l. c. 118; and Dempster v. Baxmyer (Pa.), 79 Atl. l. c. 808.]

We therefore hold that while plaintiff's conduct with reference to vilification of the defendants was extremely reprehensible, and while it was improper for plaintiff to take such action when its rights had been submitted to a court of equity, still the acts were not so connected with the subject-matter of this suit, to-wit, the unlawful conduct of the defendants, as to bar the right to relief, or such that in giving plaintiff relief the court of equity must thereby approve the methods plaintiff adopted.

We have carefully examined all the points and authorities presented by appellants and have come to the conclusion that the order of the trial court should not be disturbed.

After all, a glance at the order made by the trial judge discloses that no litigant should complain of being restrained from doing what the order requires these defendants to refrain from doing. The order merely restrains them from representing that their store and their goods belong to the plaintiff. Of course, if in fact defendants were not employing such methods —as they attempted to demonstrate in their answer and at the trial—they would not desire a judgment restraining them from such unlawful acts standing against them in a court of record for the reason that if they were not unlawfully engaged in unfair competition no such order should be made nor should they be taxed with any costs of a case in which such an order is made. But in this case the facts are against the defendants as disclosed by the overwhelming weight of

the evidence; and it was on this issue that the contest was waged—and defendants lost.

It appears from the voluminous record that the plaintiff failed to obtain relief in the permanent injunction as to several of the issues presented in its petition and covered by the temporary restraining order. It also appears that a number of witnesses for the plaintiff were used whose testimony was useless as to the issues on which plaintiff did obtain permanent relief. The judgment of the circuit court is accordingly affirmed as to the injunction, and the cause is remanded with directions to the circuit court to tax one-half of the costs in that court against the plaintiff and one-half thereof against the defendant Levin. [See Sec. 2266, R. S. 1909.] It appearing that the appellant Levin necessarily was required to print a part of the record to show the facts on which we have based the order just preceding, the sum of one hundred dollars will be taxed in this court against respondent and in favor of appellant Levin as costs for printing the abstract. *Robertson, P. J.,* and *Sturgis, J.,* concur.