SUPREME LODGE OF THE WORLD, LOYAL ORDER OF MOOSE, A CORPORATION, AND ST. LOUIS LODGE No. 1661, LOYAL ORDER OF MOOSE, A CORPORATION, APPELLANTS, v. PARAMOUNT PROGRESSIVE ORDER OF MOOSE ET AL., RESPONDENTS.*—26 S. W. (2d) 826.

St. Louis Court of Appeals. Opinion filed April 8, 1930.

*Corpus Juris-Cyc. References: Corporations, 14CJ, section 396, p. 326, n. 80; section 397, p. 329, n. 88.

*J. E. Turner* for appellants.

*Earl M. Pirkey* for respondents.

SUTTON, C.—This is an action for an injunction. The plaintiff Supreme Lodge of the World, Loyal Order of Moose, is a corporation organized and existing under and by virtue of the laws of the State of Indiana, and having its principal place of business in the city of Anderson in that State. The plaintiff St. Louis Lodge No. 1661, Loyal Order of Moose, is a corporation organized and existing under and by virtue of the laws of the State of Missouri, having its principal office and place of business in the city of St. Louis, and is a subordinate lodge of the Supreme Lodge of the World, Loyal Order of Moose. The defendant Paramount Progressive Order of Moose is a corporation organized and existing under and by virtue of the laws of the State of Missouri, and having its principal office and place of business in the city of St. Louis. The other defendants are officers and members of said Paramount Progressive Order of Moose.

Plaintiffs' bill in substance prays that defendants be perpetually enjoined from using the name ''Paramount Progressive Order of Moose'' or any other name containing the word ''Moose,'' and from using any articles of association or incorporation, by-laws, ritual, officer's title, emblem, literature or advertisement, patterned after, copied from, identical with, or similar to and in imitation of those used by the plaintiff Supreme Lodge, or plaintiff St. Louis Lodge, and from using any emblem circular in form with the head of a Moose protruding through the circular form, and with the letters ''P. A. P.'' and ''P. P. O. M.'' in the circular form or other part thereof, and from using any literature or advertisement containing the word ''Moose.''

The Order of Moose was first organized in Louisville, Kentucky, in 1888, under the name of Social Order of Moose, and in 1889 was reorganized under the name of Loyal Order of Moose. It operated under this name continuously until 1908, when it was incorporated under the laws of Indiana under the name of Supreme Lodge of the World, Loyal Order of Moose. Under this name it has continuously operated until the present time. The order grew rapidly, and for a long number of years has been operating in every state of the union, and in a number of foreign countries. It has more than fifteen hundred subordinate lodges in the United States, and a membership exceeding six hundred thousand. It has been operating in Missouri through its subordinate lodges since 1911, with a number of lodges in and about St. Louis and St. Louis County. It depends for the existence of its organization with its component parts, on its ability to secure and retain members, from whose membership fees and annual dues the expenses of maintaining the organization and the in-

stitutions it promotes and operates are paid. It has established, and maintains and operates, at Mooseheart, Illinois, a home and vocational and educational institution, known as Moosehart, for orphan children of members of the order, who are housed, clothed and fed, and given an education up to and including the high school course, and in addition the boys are taught some trade and the girls some art, such as housekeeping, music, painting, sculpture work, and draughting. More than ten million dollars have been expended at Moosehart for the benefit of such children. The order has also established, and maintains and operates, in Florida a home known as Moosehaven for aged members and their wives, and engages in other charitable works. It has expended large sums of money in building up and promoting the growth and welfare of the order, and in maintaining and operating its charitable institutions and works. Plaintiff St. Louis Lodge No. 1661, Loyal Order of Moose, was incorporated under chapter 33, article 10, of the Revised Statutes of Missouri, 1909, in the early part of 1920, as a subordinate lodge of plaintiff Supreme Lodge of the World, Loyal Order of Moose. It has maintained its office, headquarters, and lodge in St. Louis ever since its organization, and cooperates with the Supreme Lodge in carrying on the work of the order. Plaintiff Supreme Lodge uses such terms as director, general, supreme dictator, past supreme dictator, general dictator, supreme vice-dictator, supreme prelate, supreme treasurer, and supreme sergeant-at-arms, as titles of its officers. The plaintiff St. Louis Lodge uses similar titles omitting the word "Supreme." The plaintiff Supreme Lodge and all its subordinate lodges use the moosehead emblem and also the expression, "Purity, Aid and Progress" on their official papers, documents, and literature. The moosehead emblem used by the plaintiffs consists of a circular form with the head of a moose protruding through it, with the letters "P. A. P." in the upper part of the circular form, and the words "Loyal Order of Moose" in the lower part. In 1923 defendant Paramount Progressive Order of Moose was organized under article 11, chapter 90, Revised Statutes of Missouri, 1919, intending to have subordinate or local lodges operating under its direction and designating its officers by titles such as dictator general, past dictator general, dictator, supreme dictator, supreme vice-dictator, supreme prelate, and others used by the plaintiffs, and adopted as its emblem a circular form through which the head of a moose protrudes, with the letters "P. A. P." in the upper part of the circular form, and the letters "P. P. O. M." in the lower part, and, with the exception of the letters in the lower part of the circular form, exactly like the emblem adopted and used by plaintiff Supreme Lodge, and which had been previously used by it and its subordinate lodges for many years. Defendants purchased from one Elmer Newhouse a copy of the general laws and ritual adopted and used by plaintiff Supreme Lodge, and copied therefrom, and have been using

by-laws in almost the exact wording of those of plaintiff Suprem · Lodge, and also copied and prepared, and have been using, a ritual almost in the exact wording of the ritual adopted and used by plaintiff Supreme Lodge. Defendants have also been using literature and advertising copied after that of plaintiff Supreme Lodge, using the moosehead emblem before mentioned, and using the expression, "Purity, Aid and Progress."

Under the laws of the Loyal Order of Moose only white persons are eligible to membership. Under the laws of the Paramount Progressive Order of Moose only negroes are eligible to membership.

The Loyal Order of Moose, since the organization of the order, in 1888, has featured the word "Moose" in its name, emblem, literature, and advertising, and has used as its emblem the head of a moose protruding through a circular form, with the letters "P. A. P." in the upper part of the circular form, and the words "Loyal Order of Moose" in the lower part. The only difference between the emblem used by the Loyal Order of Moose and that used by the Paramount Progressive Order of Moose is that in the former the words "Loyal Order of Moose" appear in the lower part of the circular form, and in the latter the letters "P. P. O. M." appear in the lower part of the circular form. Otherwise the emblems are exactly alike. The Supreme Lodge of the World, Loyal Order of Moose, is known as the order of Moose, and the local and subordinate lodges are known as Moose Lodges, and the members are known as Moose, and have been so known and recognized by the public throughout the country for many years. The Paramount Progressive Order of Moose, since its organization, has been featuring the word "Moose" in its literature and advertising, and in soliciting persons to join the order, in addition to using the word in its name and the moosehead in its emblem. It was shown in evidence that if the impression should become current in the public mind that plaintiffs' membership consisted of negroes as well as white persons, it would be highly detrimental to plaintiffs by deterring persons eligible to membership from joining the order.

Upon the trial of the cause, the court gave judgment dismissing plaintiffs' bill. From this judgment plaintiffs appealed to the Supreme Court. That court, finding itself without jurisdiction, transferred the cause to this court. The opinion delivered by the Supreme Court in transferring the cause here is reported in 17 S. W. (2d) 327.

We entertain no doubt that plaintiffs are entitled to have the defendants enjoined as prayed. Section 13272, Revised Statutes 1919, provides that no person, society, association or corporation shall assume, adopt, or use a name of a military, ex-military, patriotic, benevolent, humane, fraternal, or charitable organization, incorporated or organized under the laws of this or any other state or of the United States or a name so nearly resembling the name of such incorporated organization as to be a colorable imitation thereof, or

calculated to deceive any person with respect to such corporation. Moreover, independent of statutory enactment, the authorities uniformly hold that a corporation or other organization, whether of a benevolent, charitable, fraternal, or similar character, or of a commercial or business character, has a right to adopt a name by which it shall be known, and that the use by another corporation or organization of such name or a similar or colorable imitation thereof, such as is calculated to confuse or deceive the public, will be enjoined by the courts. So, too, the use of colorable imitations of emblems, rituals, laws, and literature of one organization by another calculated to confuse or deceive will be enjoined. It is not essential to show actual confusion or deception or intention to confuse or deceive. It is sufficient to show a probability that deception or confusion may result. [Knights of Maccabees of the World v. Searle (Nebr.), 106 N. W. 448; Benevolent and Protective Order of Elks v. Improved Benevolent and Protective Order of Elks of the World, 111 N. Y. Supp. 1067; Benevolent and Protective Order of Elks of the United States of America v. Improved Benevolent and Protective Order of Elks of the World (Tenn.), 118 S. W. 389; Creswill v. Grand Lodge Knights of Pythias (Ga.), 67 S. W. 188; Grand Lodge of the Ancient Order of United Workmen v. Graham, 96 Ia. 592; Rudolph v. Southern Beneficial League, 7 N. Y. Supp. 135; Red Polled Cattle Club of America v. Red Polled Cattle Club of America, 108 Ia. 105; International Committee of Young Women's Christian Associations v. Young Women's Christian Association of Chicago, 194 Ill. 194; Filley v. Fassett, 44 Mo. 168; State ex rel. Hutchinson v. McGrath, 92 Mo. 355, 5 S. W. 29; Liggett & Myers Tobacco Co. v. Sam Reid Tobacco Co., 104 Mo. 53, 15 S. W. 843; National Circle, Daughters of Isabella v. National Order of Daughters of Isabella, 270 Fed. 723; Grand Lodge Knights of Pythias of North and South America v. Grand Lodge Knights of Pythias, 174 Ala. 395; Salvation Army in United States v. American Salvation Army, 120 N. Y. Supp. 471; Legal Aid Society v. Co-operative Legal Aid Society, 83 N. Y. Supp. 926; State Council v. National Council, 71 N. J. Eq. 433; Talbot v. Independent Order of Owls, 220 Fed. 660.]

There is no question that defendants have pirated the word, "Moose," which is the prominent, essential, and distinguishing feature of plaintiffs' name, along with their emblem, ritual, laws and literature, which will probably, if not necessarily, result in deception and confusion in the public mind highly detrimental to the plaintiffs.

The defendants contend that since only white persons are eligible to membership in the Loyal Order of Moose and only colored persons are eligible to membership in the Paramount Progressive Order of Moose, there can be no real competition between the two orders and no confusion can arise in the mind of any persons desiring to join one or the other of the orders. The same contention, made in Benevo-

lent and Protective Order of Elks of the United States of America v. Improved Benevolent and Protective Order of Elks of the World (Tenn.), 118 S. W. 389, was quite satisfactorily disposed of by the court, as follows:

"We are of the opinion that the injunction was properly awarded and made perpetual. While the complainant was not engaged in business for profit, in the sense of commerce and trade, yet it employed certain business activities for the purpose of maintaining itself and to procure funds to carry out the purpose of its organization, and it maintained certain business institutions, its clubhouses, and its home for aged and invalid members. The name it had acquired and appropriated had become very valuable, in the nature of a trade-name, by which it was accustomed to appeal to the public, and on the faith and reputation of which it was accustomed to obtain and receive from the public large sums of money. The name of the defendant is so similar that in the nature of things it will cause the one order to be mistaken for the other, and the enterprises of each to be confused with those of the other. The fact that the defendant's membership is composed of colored people will not materially change the result. In addition to the close similarity in the names, if a badge the same in appearance as that of complainant be worn by one of defendant's members, the inference is bound to be immediate in the public mind that the membership is the same. Few will take the trouble to inquire, or have the means of inquiring, whether such person is a member of complainant organization or of a different organization. This confusion of the two orders will, as shown in the record, result in great financial detriment to the complainant. The complainant first used the name, and gave to it the great financial, business, and social value, which is now attached to it, to say nothing of the fact that complainant is a prior corporation, which is entitled to have its corporate name protected. Under the facts stated, we think the complainants were entitled to the relief sought in the bill."

The Commissioner recommends that the judgment of the circuit court be reversed and the cause remanded to that court with directions to enter judgment enjoining defendants agreeable to the prayer of the plaintiffs' bill.

PER CURIAM:—The foregoing opinion of SUTTON, C., is adopted as the opinion of the court. The judgment of the circuit court is accordingly reversed and the cause remanded to that court with directions to enter judgment enjoining defendants agreeable to the prayer of the plaintiffs' bill. *Haid, P. J.,* and *Becker* and *Nipper, JJ.,* concur.