**MISSOURI FEDERATION OF the BLIND,**
Plaintiff-Respondent,

v.

**NATIONAL FEDERATION OF the BLIND OF MISSOURI, INC., and National Federation of the Blind, Defendants and Intervenor Appellants.**

No. KCD 26198.

Missouri Court of Appeals,
Kansas City District.

Dec. 3, 1973.

Motion for Rehearing and/or Transfer
Denied Jan. 4, 1974.

Application to Transfer Denied Feb. 11, 1974.

1

Charles M. Tureen, Blumenfeld, Kalishman, Marx & Tureen, Clayton, George E. Feldmiller, Stinson, Mag, Thomson, McEvers & Fizzell, Kansas City for defendants and intervenor appellants.

John B. Busch, Busch, Baine & McEnery, Clayton, David Waldman, Waldman, Milligan & Lombardo, Kansas City, for plaintiff-respondent.

Before SHANGLER, P. J., and SWOFFORD and WASSERSTROM, JJ.

SHANGLER, Presiding Judge.

This appeal involves contentions by competing benevolent societies of unfair competition in the use of tradenames and trademarks. The declared corporate purpose of each of the litigants is the social and economic welfare of the blind. The

plaintiff Missouri Federation of the Blind sought to enjoin defendant National Federation of the Blind of Missouri, Inc. on the contention that defendant's tradename was a colorable imitation of plaintiff's name so that confusion to the public was likely to result from its continued use. The defendant-intervenor National Federation of the Blind, a national organization whose purposes are served in this state by its affiliate, defendant National Federation of the Blind of Missouri, Inc., sought to enjoin plaintiff Missouri Federation of the Blind on contentions that plaintiff's tradename and trademark were colorable imitations of its own and also that its name had the protection of statutory priority.

The cause was tried on the stipulation of the parties, exhibits, and admissions read into the record from depositions. The trial court sustained plaintiff's request for injunctive relief against defendant National Federation of the Blind of Missouri, Inc. and denied the petition of defendant-intervenor National Federation of the Blind. The defendants appeal.

The defendant-intervenor National Federation of the Blind [NFB] was organized on November 16, 1940 and incorporated in the District of Columbia in the year 1949. NFB is composed of 45 state affiliates, among them defendant National Federation of the Blind of Missouri, Inc. [Affiliate], and supports its activities through assessments of its affiliates, dues from non-locally affiliated members and public charity contributions. In furtherance of its purpose to educate the public on matters affecting the social and economic welfare of the blind, NFB conducts national fund raising campaigns in its own name and through its affiliates. These activities have been carried on in Missouri continuously since 1952, and since that year, NFB has published monthly the "Braille Monitor" in ink and braille and has mailed the magazine to subscribers in Missouri. Since incorporation, National Federation of the Blind has conducted its activities in its corporate name and by a distinctive emblem which displays the contraction "NFB" in a triangle within a circle with the slogan "Security, Equality, Opportunity" circumambient:

It has been the policy of NFB that its affiliates use the corporate contraction and mark for the purpose of identifying their kinship with NFB to the general public and to the blind in particular.

The plaintiff Missouri Federation of the Blind [MFB] was chartered under the laws of this state on January 23, 1957. MFB was organized with the assistance of NFB and became its Missouri affiliate. This status of affiliation between them was terminated in November of 1961. A new affiliate of NFB was incorporated on September 13, 1962 under the name Progressive Blind of Missouri. MFB, the former affiliate of NFB, and Progressive Blind, the successor affiliate, operated in Missouri without discord until July of 1971 when Progressive Blind by charter amendment changed its name to National Federation of the Blind of Missouri, Inc. MFB protested that the new name of the successor affiliate was deceptively similar to its own and would cause public confusion, but the protest was unavailing. This litigation ensued.

MFB has directly, and through nine branch organizations throughout Missouri, conducted numerous activities to promote the welfare of blind persons, among them: state-wide mail solicitations for contributions from the general public; annual conventions at sites throughout the state; edu-

cational campaigns for the prevention of blindness; public fund raising by the sale of merchandise; quarterly publication in ink and braille of the magazine, "The Missouri Chronicle"; establishment of a credit union for individuals and organizations of the blind; and cooperation with the Missouri State Bureau of the Blind to encourage and foster educational and training opportunities for the blind of this state. The plaintiff Missouri Federation of the Blind adopted a mark, which appears on its letterhead, consisting of the contraction "MFB" with a circle from which two simulated beams radiate, and beneath which appears the legend: "A Shaft of Light Piercing the Circle of Darkness"

**"A Shaft of Light Piercing the Circle of Darkness"**

It is the use of this mark-device of MFB which NFB by petition of intervention seeks to enjoin as a colorable imitation of its own mark, calculated to confuse and mislead the public.

All that the record tells us about the defendant National Federation of the Blind of Missouri, Inc. [Affiliate] is that since its organization in 1962, it has been the authorized affiliate of NFB and has identified that kinship on its literature and correspondence, has publicly used derivations of the NFB emblem, and has supported and implemented the policies of NFB.

■ The common law has long recognized that the name of a business corporation or association is a necessary element of its existence and the right to its exclusive use will be protected, upon principles applied in cases of trademark and tradename, against use by another concern where the circumstances are such that de-

ception or confusion may result. State ex rel. Great American Home Savings Institution v. Lee, 288 Mo. 679, 233 S.W. 20, 28[11] (banc 1921); National Bank in North Kansas City v. Bank of North Kansas City, 238 Mo.App. 19, 172 S.W.2d 967, 969[1–4] (1943); State ex rel Hutchison v. McGrath, 92 Mo. 355, 5 S.W. 29, 30[2] (1887); 18 Am.Jur.2d, Corporations, § 146. On the same principle a benevolent or other not-for-profit corporation or association has the right to adopt a name by which it shall be known and to have the benefit of the good reputation that name imports, and a court of equity will enjoin another organization from using the same or another name so similar as to be misleading. Supreme Lodge of the World, Loyal Order of Moose v. Paramount Progressive Order of Moose, 224 Mo.App. 276, 26 S.W.2d 826, 828[1, 2] (1930); Purcell v. Summers, 145 F.2d 979, 985[5] (4th Cir. 1944); Golden Slipper Square Club v. Golden Slipper Restaurant & Catering, Inc., 371 Pa. 92, 88 A. 2d 734, 736[4] (1952); Nims on Unfair Competition and Trade-Names § 84 (4th ed.). Although the basis for liability in such cases is unfair competition, actual competition is not of the gist of the action, and the use of deceptively similar tradename will be enjoined although the parties are not engaged in competitive activities. Thomas Patrick, Inc. v. KWK Inv. Co., 357 Mo. 100, 206 S.W.2d 359, 360[1–3] (1947); Better Business Bureau, Etc. v. Chappell, 307 S.W.2d 510, 515[6, 7] (Mo. App.1957); Nims on Unfair Competition and Trade-Marks § 1 (4th ed.).

The appellant Affiliate complains that its name, National Federation of the Blind of Missouri, Inc. is not so deceptively similar to that of plaintiff MFB, Missouri Federation of the Blind, as to authorize a court of equity to enjoin its continued use by Affiliate, and that since there was no evidence of name confusion or pecuniary injury to MFB, the judgment should not stand.

■ It is difficult to state a precise rule by which one name may be said to be

an imitation of another. "Where, however, the names so far resemble each other that a person using that care, caution and observation which the public uses and may be expected to use, would mistake one for the other, then the new name is to be regarded as an imitation of the former." State ex rel. Hutchison v. McGrath, 92 Mo. 355, 5 S.W. 29, 31[2] (1887); National Bank in North Kansas City v. Bank of North Kansas City, 238 Mo.App. 9, 172 S.W.2d 967, 971[7] (1943); Better Business Bureau, Etc. v. Chappell, 307 S.W. 2d 510, 516[10] (Mo.App.1957). The question of whether the use of a similar name constitutes unfair competition is a determination of fact from the particular circumstances. Furniture Hospital v. Dorfman, 179 Mo.App. 302, 166 S.W. 861, 863[6] (1914). In the present case, the two corporations have the same character and purpose: to promote the economic and social welfare of the blind of Missouri. And in the nature of things, their most vital activity, fund raising, brings them into unavoidable competition. In these circumstances, since the sale of goods does not fully support MFB's charitable works, its ability to raise funds for the fulfillment of its corporate purpose derives from the reputation of its good name, and any confusion of that name in the public mind does it grievous injury. The names Missouri Federation of the Blind and National Federation of the Blind of Missouri, Inc. are strikingly similar. The only differences between them, their word order and the designation "National" which caps the name of defendant Affiliate, do not present fair distinguishing features. The word "National" does not offset the deception which is likely to result to a duly cautious public from the imitative redundancy of the words "Missouri", "Federation", and "Blind." Although these names are not identical, "[s]imilarity will deceive almost as effectually as precise identity, and it is well known that nice and careful discrimination between names cannot be expected from a busy public. Furniture Hospital v. Dorfman, *supra*, 1. c. 166 S.W. at 863[6]. In

these circumstances which show: that plaintiff MFB and defendant Affiliate pursue indistinguishable corporate purposes; that the nature and geographic scope of their vital activities coincide; that plaintiff MFB has carried on extensive activities under its name for the welfare of the blind of this state uninterruptedly for a number of years—in the course of which its tradename has necessarily acquired good will; that defendant affiliate after a decade of operation as Progressive Blind of Missouri discarded that name for a tradename virtually identical to that already appropriated by plaintiff MFB, we conclude with the trial court that a reasonably prudent public would easily be deceived by the simulation of names and confuse one for the other. Empire Trust Co. v. Empire Finance Corp., 226 Mo.App. 298, 41 S.W.2d 847 (1931); State ex rel. Hutchison v. McGrath, 92 Mo. 355, 5 S. W. 29 (1887); Shrout v. Tines, 260 S.W. 2d 782 (Mo.App.1953); Furniture Hospital v. Dorfman, 179 Mo.App. 302, 166 S.W. 861 (1914); Better Business Bureau, Etc. v. Chappell, 307 S.W.2d 510 (Mo.App. 1957). Nor, as defendant Affiliate contends, is it prerequisite to injunctive relief in an action of this nature that there be proof of actual deception or that plaintiff has suffered actual damage or injury to good will. It is enough to show a probability that deception or confusion may result; such threatened future injury is sufficient basis for relief. Thomas Patrick, Inc. v. KWK Inv. Co., *supra*, 1. c. 206 S. W.2d at 360[1–3]; Supreme Lodge of the World, Loyal Order of Moose v. Paramount Progressive Order of Moose, 224 Mo.App. 276, 26 S.W.2d 826, 838[1–2]; Shrout v. Tines, *supra*, 1. c. 260 S.W.2d at 789[5].

Affiliate insists, however, that the names Missouri Federation of the Blind and National Federation of the Blind of Missouri, Inc. are sufficiently distinctive so that persons using due care in differentiating between them are not likely to be misled, and cites National Bank in North

Kansas City v. Bank of North Kansas City, 238 Mo.App. 19, 172 S.W.2d 967, 971[7] (1943) in support. In that case the court determined that the name Bank of North Kansas City was not a deceptive simulation of National Bank of North Kansas City and refused to enjoin its appropriation by a subsequent user. Whatever superficial analogy the name uses in that case may bear to the contentions here is dispelled by the rationale of the decision which recognizes that, because the variety of names available for such activities is more limited (l. c. 172 S.W.2d at 971[6]), "a broader latitude [is] allowed in the matter of similarity of names in banking institutions than . . . in ordinary [commercial] enterprises". See also, Shrout v. Tines, *supra*, l. c. 260 S.W.2d at 787; Pan American Realty Corp. v. Forest Park Manor, Inc., 431 S.W.2d 144, 149[9, 10] (Mo.1968). Cognately defendant Affiliate contends that the testimony of the recording secretary of MFB that she knew of no instance of confusion from the two names, either personally or in the performance of her official duties, sufficiently discounts any basis for the trial court's finding of likely deception. The stipulation of facts shows, however, that Affiliate's change of corporate name was approved by the Secretary of State on July 16, 1971 and that plaintiff MFB's petition to enjoin that use was filed September 30, 1971, a scant two months later. This dispute has pended in the courts since and, it is fair to assume, has served as a *caveat* to the public of the contentions in name use and the identities of those contending. In such circumstances, evidence of lack of actual public confusion is entitled to little weight. On the other hand, a long period of continued use by both parties without evidence of confusion will support a conclusion that there is no likelihood of confusion or deception.

 Affiliate contends further that the use in a name of generic, geographic or descriptive words, such as "Missouri", "Federation", "Blind", are for the use of all persons and, in the absence of a fraudulent intent, will not be enjoined as unfair competition when simulated by a subsequent user. While it is the rule that words merely descriptive, geographic or generic are common property and generally cannot be exclusively appropriated as a tradename [Simplified Tax Records, Inc. v. Gantz, 333 S.W.2d 328, 337[8] (Mo.App.1960); Pan American Realty Corp. v. Forest Park Manor, Inc., *supra*, l. c. 431 S.W.2d at 149], such words may " 'nevertheless be protected against simulation when they have acquired a secondary meaning, differing from their primary meaning, that is, when they have become associated in the mind of the public as identifying the source or origin of goods, [services] themselves.' " Shrout v. Tines, *supra*, l. c. 260 S.W.2d at 788[4]; Better Business Bureau, Etc. v. Chappell, *supra*, l. c. 307 S.W.2d at 515[3–5]. The apparent success of plaintiff's operation as Missouri Federation of the Blind during the decade of its independent status is sufficient proof that plaintiff's tradename had become identified with its services in the public mind and had acquired a secondary meaning to which plaintiff has the exclusive right.

 Nor does the stipulated fact that defendant Affiliate changed its name from Progressive Blind of Missouri, Inc. to National Federation of the Blind of Missouri, Inc. in good faith compliance with the policy of NFB to more closely identify state affiliates with the parent organization affect plaintiff MFB's claim to relief. The invocation of equity rests upon the unfairness of a subsequent use which misappropriates a name already identified by the public with the activities of another; *the owner may not be deprived of the benefits of a valid tradename, whatever may be the motives of the infringer.* McCann v. Anthony, 21 Mo.App. 83, 90 (1886); Supreme Lodge of the World, Loyal Order of Moose v. Paramount Progressive Order of Moose, *supra*, l. c. 26 S.W.2d 828 [1, 2].

Finally, without citation of authority, defendant National Federation of the Blind of Missouri, Inc. [Affiliate] contends that the restraint of the judgment is overly-broad and should be dissolved by this Court. In substance, the judgment enjoined Affiliate from using any combination of the words "Missouri", "Federation", "Blind", unless Affiliate chose to revert to the use of its former name, The Progressive Blind of Missouri. The judgment is within the issues, based upon substantial evidence, and sufficiently defined.

The contention of defendant-intervenor National Federation of the Blind [NFB] on this appeal is that the trial court erred in refusing to enjoin Missouri Federation of the Blind [MFB] from the use of a name and emblem so similar to its own as to be calculated to confuse, mislead and deceive the public. NFB asserts paramount right to its name and emblem under §§ 417.150, et seq., RSMo 1969, which accord, as between charitable organizations claiming the right to the same or similar name, the priority and exclusive use to that charity first lawfully organized and using the name, and prohibits colorable imitation by subsequent users. In its answer MFB pleaded laches in bar of intervenor-defendant NFB's claim for injunctive relief. The trial court determined that because of the unexplained delay by NFB by the enforcement of the claim for injunction, MFB's plea of laches would be sustained. NFB contends that mere delay, in the absence of abandonment of its tradename, does not defeat NFB's recourse to equity to prevent MFB's continuing unfair use of tradename.

Laches is the neglect, for an unreasonable and unexplained length of time, under circumstances permitting diligence, to do what in law should have been done. Keiser v. Wiedmer, 283 S.W.2d 914, 917[2–4] (Mo.App.1955); 30A C.J.S. Equity § 112. Mere delay in asserting a right does not of itself constitute laches; the delay must work to the disadvantage and prejudice of the party against whom the right is asserted. In the determination of laches, therefore, the passage of time is not as important as the circumstances surrounding it. Lake Development Enterprises, Inc. v. Kojetinsky, 410 S.W.2d 361, 367[11–17] (Mo.App.1966); Jones v. McGonigle, 327 Mo. 457, 37 S.W.2d 892, 896[11–15] (1931). The doctrine of laches rests upon the maxim that equity aids the vigilant and not those who sleep on their rights. A court of equity, therefore, in the exercise of conscience will refuse its aid to stale demands where the party has slept upon his rights and acquiesced for a great length of time, if injustice would be done by granting the relief asked. Snow v. Funck, 41 S.W.2d 2, 5[7, 8] (Mo.1931); Luesse v. Weber, 350 S.W.2d 424, 430 (Mo.App.1961); 30A C.J.S. Equity § 117. This principle has peculiar force when the injunctive power of a court is invoked. 42 Am.Jur.2d, Injunctions, § 61.

Although reasonable diligence must be used in seeking injunctive relief against infringement of a trade symbol or unfair competition, the doctrine of laches does not apply with full force to such cases. Equity will not, as a general rule, refuse an injunction on account of delay in seeking relief, even though the delay may be such as to preclude an accounting for profits, because repeated or continuous infringements of a trade symbol establish no right to continue them and mere delay in bringing suit to enjoin them does not prove an abandonment of rights by the owner, unless infringement has continued so long and under such circumstances as to defeat the right itself. Layton Pure Food Co. v Church & Dwight Co., 182 F. 35, 41 (8th Cir. 1910); Menendez v. Holt, 128 U.S. 514, 524, 9 S.Ct. 143, 32 L.Ed. 526 (1888); Saxlehner v. Eisner & Mendelson Co., 179 U.S. 19, 21, 21 S.Ct. 7, 45 L.Ed. 60 (1915); 52 Am.Jur., Trademarks, Tradenames, Etc., § 156. The doctrine of laches, as applied to the law of trademarks and unfair competition in this state, was treated in three early cases, Sanders v. Jacob, 20 Mo.App.

96 (1885); Gaines v. Whyte Grocery, Fruit & Wine Co., 107 Mo.App. 507, 81 S.W. 648 (1904); and Baum Mercantile Co. v. Levin, 189 Mo.App. 237, 174 S.W. 442 (1915), and most fully expounded in *Gaines, supra*, 1. c. 81 S.W. at 654[4]:

A trade-mark may be lost completely by laches, or the proprietor may lose simply the right to an account of gains or profits. *Where the person who infringes a trade-mark does so with a show of right and justification, inexcusable laches on the part of a proprietor will work a forfeiture of the trade-mark and disentitle him to any relief whatever;* but where the infringer has appropriated the trade-mark without any show of justification, and in fraud of the proprietor's rights, laches on the part of the proprietor will usually disentitle him to an account of gains and profits, but will not defeat the remedy by injunction.

. . . . . .

Nor will the acquiescence of any person in the wrongful use of his name estop him from asserting his rights in equity, unless he has notice, during such acquiescence, of the facts rendering the use of his name wrongful.

. . . . . .

Where one party infringes upon the trade-mark of another, there is no fixed time in which he must bring his suit to save his rights. There must be such neglect on the part of the complainant as shows an intention to abandon his trade-mark before he can be estopped to have injunctive process. (Emphasis added).

▮ The intent to abandon, however, need not be directly shown but may be inferred from circumstances. Baglin v. Cusenier, 221 U.S. 580, 599, 31 S.Ct. 669, 55 L.Ed. 863 (1911). Acquiescence by the proprietor of a trade symbol in its use by another is evidence of abandonment of the right to the other. Fruit Industries, Limited, v. Bisceglia Bros. Corp., 101 F.2d 752,

755[4] (1939); Sherwood Co., Inc. v. Sherwood Distilling Co., 177 Md. 455, 9 A.2d 842, 845[11–13] (1939). But "[m]ere delay or acquiescence cannot defeat the remedy by injunction in support of the legal right [to the exclusive use of the trade symbol], unless it has been continued so long, and under such circumstances, as to defeat the right itself". Menendez v. Holt, 128 U.S. 514, 523, 9 S.Ct. 143, 144, 32 L.Ed. 526 (1888). Where acquiescence and long delay are accompanied by circumstances which give rise to an estoppel the right of the proprietor of a trade symbol to the intervention of equity is lost by laches and a new right is created in the infringer: "[T]here are exceptional cases in which the owners of trade-marks have acquiesced in the use of them by the public or by competitors for such a length of time and under such circumstances that their action has been held to estop them from denying that they had abandoned their trade-marks and to constitute a bar to an application for an injunction against an infringement of them. French Republic v. Saratoga Vichy Spring Co., 191 U.S. 427, 437, 24 Sup.Ct. 145, 48 L.Ed. 247." Layton Pure Food Co. v. Church & Dwight Co., 182 F. 35, 41 (8th Cir. 1910); Landers, Frary & Clark v. Universal Cooler Corporation, 85 F.2d 46, 48[2] (2nd Cir. 1936); Pomeroy's Equity Jurisprudence, Vol. 2, § 419 (5th ed.1941). This rule, that circumstances which give rise to an estoppel will disentitle the proprietor of a trade symbol to his remedy by injunction, has been implicitly recognized by the three Missouri cases which have dealt with the subject [Sanders v. Jacob, *supra*, 1. c. 20 Mo.App. at 99; Gaines v. Whyte Grocery, Fruit & Wine Co., *supra*, 1. c. 81 S.W. at 655; and Baum Merchantile Co. v. Levin, *supra*, 1. c. 174 S.W. at 444], although each of those cases found that the name imitation was with fraudulent intent so that laches was not available to the infringer. The estoppel arises from the inequity of permitting a party who, with knowledge of his rights, takes no steps to enforce them until the condition of the

other party has, in good faith, become so changed that he cannot be restored to his former state without producing an injustice. Jones v. McGonigle, 327 Mo. 457, 37 S.W.2d 892, 896[11–15] (1931); Klebba v. Struempf, 224 Mo.App. 193, 23 S.W.2d 205, 207[1–5] (1930); 30 C.J.S. Equity § 118; 42 Am.Jur.2d, Injunctions, § 68.

 On these principles, a clear case of laches appears whereby defendant-intervenor is barred from asserting against MFB the exclusive right to the tradename "National Federation of the Blind" or from enjoining MFB from use of the colorable name, "Missouri Federation of the Blind". The name use and activities of MFB were known to NFB from the very outset of MFB's corporate career. MFB had been organized under that name as an affiliate of NFB through the efforts of NFB. When MFB disaffiliated some five years later, NFB could not help but know that MFB would thereby become a competing benevolence, imitative in name and practice; yet NFB stood silently by. NFB took no step to assert the priority and exclusive right to the use of its name free from the unfair competition of MFB's deceptive imitation, which it now claims under the provisions of § 417.150 et seq. and common law principles. Then, when after another year, NFB re-established affiliation in Missouri, it was under the corporate name "Progressive Blind of Missouri"; NFB did not claim "Missouri Federation of the Blind" for its successor affiliate, not did it protest the continued name use by MFB was deceptive to the public, although by then MFB had been in actual competition with NFB in Missouri for a year. The first claim by NFB that the name and symbol used by MFB were colorable imitations of its own is by this petition for intervention, asserted after more than ten years of independent enterprise by MFB. During that time, with NFB's acquiescence, MFB's corporate services have become identified with those trade symbols in the public mind. Under that identification, MFB has operated the "Missouri Federation of the Blind Credit Union", has successfully solicited from the public contributions necessary to its existence and function, has merchandised its products, has held publicly advertised annual conventions, and has done its charitable work in affiliation with nine kindred organizations throughtout the State of Missouri. From NFB's prolonged silence and inaction after knowledge of MFB's adverse use, MFB had reason to believe NFB had abandoned whatever protectible right to exclusive use of the trade symbols the law otherwise allowed. Gaines v. Whyte Grocery Fruit & Wine Co., supra, 1. c. 81 S.W. at 654[4]; Nims on Unfair Competition And Trade-Marks, § 408, p. 1271 (4th ed). In reliance on NFB's persistent acquiescence in MFB's adverse trade symbol use, and on the assumption that NFB's silence was assent to such use, MFB has established under that name the reputation that its activities are worthy of public subscription, so that it would be a serious dislocation of MFB's fund-raising apparatus —the life-line of any charity—to stop that use now. Even if [as we have assumed but not decided] the name, symbol and insignia use by Missouri Federation of the Blind were enjoinable as colorable imitations, NFB is now estopped from resort to equity for that purpose. The parties can no longer be restored to their positions at the outset, and it would be inequitable to allow NFB, whose neglectful course of conduct induced MFB's growth and enhancement of reputation under that name, to reap the benefit of that reputation by enforcement of a right it had since abandoned. Menendez v. Holt, 128 U.S. 514, 524, 9 S.Ct. 143, 32 L.Ed. 526 (1888); Ancient Egyptian Arabic Order, Etc. v. Michaux, 279 U.S. 737, 749, 49 S.Ct. 485, 73 L.Ed. 931 (1929); Creswill v. Knights of Pythias, 225 U.S. 246, 262, 32 S.Ct. 822, 56 L.Ed. 1074 (1912); Gaines v. Whyte Grocery, Fruit & Wine Co., supra, 1. c. 81 S.Ct. at 654[4].

The judgment of the trial chancellor is in all respects correct and is accordingly affirmed.