**AMERICAN EXPRESS COMPANY**

v.

**PAN AMERICAN EXPRESS INTERNATIONAL, LTD.; Panamex International, Ltd.; Robert J. Doorn; Panamex International, Inc.; Arturo Suarez, and Maria Eugenia Suarez.**

Civ. A. No. 80–2103.

United States District Court,
E. D. Pennsylvania.

Feb. 11, 1981.

Richard E. Alexander, Ltd. by James D. Zalewa, Chicago, Ill., Howson & Howson by Stanley B. Kita, Philadelphia, Pa., for plaintiff.

Orenstein, Snitow, Sutak & Pollack, P.C. by Alan M. Pollack, New York City, Wolf, Block, Schorr & Solis-Cohen by Robert C. Podwil, Philadelphia, Pa., for defendants.

MEMORANDUM OPINION AND ORDER

WEINER, District Judge.

This is an action alleging trademark infringement and unfair competition in which plaintiff seeks to permanently enjoin defendants from using the term "American Express", the acronym "AMEX", or any terms containing "American Express" or "Amex" in connection with defendants' business of offering coins for sale through direct mail. Memoranda of law, affidavits, depositions and exhibits have been submitted by the parties, and a hearing was held before this court. For the reasons set forth below, we find in favor of plaintiff and shall grant a permanent injunction against the defendants.

## I

Plaintiff has been in business since 1850 and over the last 130 years has used the name American Express Company in connection with all of its services. During this time, plaintiff has offered a wide range of financial and financially related services throughout the United States and the world. Since 1958, plaintiff has offered charge card services and since 1966 has offered a Gold Card version of its green charge card. There are currently over 10,-000,000 American Express card members worldwide, with over 8,000,000 card members in the United States, over 1,000,000 of which are Gold Card members. Plaintiff's annual expenditure to advertise and promote its charge card services through direct mail advertisements, television, magazine and newspaper advertisements, and distribution of brochures, is over $10,000,000. Annual revenues related to plaintiff's charge card operations exceed $6,000,000., and annual membership fees exceed $250,-000,000.

The American Express card is accepted at businesses (termed "service establishments" by American Express) throughout the United States. These establishments include coin dealers and jewelry stores. Such establishments prominently display decals indicating that the American Express card is accepted by them.

Since 1974, plaintiff has made approximately twenty offerings of precious metal coins and commemorative medallions by way of direct mail solicitation to its card members and the greater public, with sales of these coins in excess of $60,000,000.

Plaintiff owns four federal trademark registrations for its mark "American Express" covering a wide variety of financial, financially related and other services, including, *inter alia*, export marketing services, credit card services, international banking services, travelers cheques and money order services, monetary exchange services, insurance brokerage services, trav-

el agency services, general merchandising mail order services and hotel services.

Plaintiff has used the term "AMEX", both by itself and in connection with other terms, as an acronym for American Express to refer to its services and subsidiaries. Since 1969, plaintiff has used "AMEX" in its "Services and Offices" booklets to refer to many of its services, and since 1977 has used an "AMEX GRAM" to correspond with cardholders. Plaintiff has also used "REFUNDAMEX" as a cable address, and "AMEX" to indicate its application in joint ventures such as "Warner-Amex", and to refer to subsidiaries, such as "DRILLA-MEX". The term "AMEXCO" was also used by plaintiff in the late 19th century in conjunction with its money orders and travelers cheques. In addition, the terms "AMEX" and "AMEXCO" have been used by others in corresponding with plaintiff, and have been used in various newspapers and magazines to refer to plaintiff.

The Trademark Trial and Appeal Board (TTAB) has recently dismissed an opposition filed by the American Stock Exchange, Inc. to the application of American Express Company to register the service mark "AMEX" for hotel and motel services, for travel services, and for language education services.[1] The TTAB did sustain the opposition to one class of registration but only as regards investment banking and management services and mutual funds finding a likelihood of confusion with the American Stock Exchange's use of the registered service mark "AMEX" for the marketing of securities and securities exchange services, as well as non-registered use of investment banking and management services. Finding no likelihood of confusion, the TTAB granted American Express the right to file a new application with respect to that class for credit card services, travelers cheque services, money order services, international banking services, military banking services, financial services for travelers, insurance underwriting services, and foreign remittance services.

---

1. *American Stock Exchange, Inc. v. American Express Company*, 207 U.S.P.Q. 356 (TTAB 1980).

In addition, plaintiff formerly owned a federal registration for "AM–EX EXPRESS RESERVATIONS" for motel and hotel reservation services, but that registration was cancelled under the Lanham Act, 15 U.S.C. § 1058(b), for failure of plaintiff to file the required affidavit attesting to continued use.

Defendants assert that the correct corporate name of the companies named as defendant is Panamex, Limited, a company incorporated in Hong Kong in June, 1979, with offices in Hong Kong, Switzerland and Canada. Robert J. Doorn is its President.[2]

Since approximately October or November 1979, defendants have conducted a direct-mail campaign soliciting the sale of gold and silver coins and bullion pieces. In connection with this campaign, defendants use the trade name Pan American Express International on a gold colored "identification card", use the term "PANAMEX" as an acronym for Pan American Express on its identification card and on other materials, and use a stylized globe design in connection with the acronym "PANAMEX". In addition, defendants' stationery used in corresponding with potential customers, states that "PANAMEX is a registered trademark of Pan American Express International, Ltd."

In fact, Panamex is not a registered trademark of defendants, and Mr. Doorn has testified at his deposition that there is no entity known as Pan American Express International, Ltd.

Defendants have utilized the same mailing lists as plaintiff for their solicitations, and use the term "PANAGRAM" in corresponding with customers.

## II

Plaintiff alleges trademark infringement under 15 U.S.C. § 1114(1);[3] unfair competition pursuant to 15 U.S.C. § 1125(a);[4] and unfair competition under Pennsylvania law, 73 PA. § 201–3,[5] and at common law.

---

**2.** Plaintiff appears to have abandoned its claim against PANAMEX International, Inc., Arturo Suarez and Maria Eugenia Suarez, as these parties are no longer even listed by plaintiff in the caption which appears on its latest filing with the court. Defendants deny any connection with or knowledge of those named parties.

**3.** 15 U.S.C. § 1114(1) provides:

(1) Any person who shall, without the consent of the registrant—

(a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or

(b) reproduce, counterfeit, copy, or colorably imitate a registered mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive. shall be liable in a civil action by the registrant for the remedies hereinafter provided. Under subsection (b) of this section, the registrant shall not be entitled to recover profits or damages unless the acts have been committed with knowledge that such imitation is intended to be used to cause confusion, or to cause mistake, or to deceive.

**4.** 15 U.S.C. § 1125(a) provides:

(a) Any person who shall affix, apply, or annex, or use in connection with any goods or services, or any container or containers for goods, a false designation of origin, or any false description or representation, including words or other symbols tending falsely to describe or represent the same, and shall cause such goods or services to enter into commerce, and any person who shall with knowledge of the falsity of such designation of origin or description or representation cause or procure the same to be transported or used in commerce or deliver the same to any carrier to be transported or used, shall be liable to a civil action by any person doing business in the locality falsely indicated as that of origin or in the region in which said locality is situated, or by any person who believes that he is or is likely to be damaged by the use of any such false description or representation.

**5.** 73 PA. § 201–3 provides in part:

Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce as defined by subclauses (i) through (xvii) of clause (4) of section 2 of this act[1] and regulations promulgated under section 3.1 of this act[2] are hereby declared unlawful.

1. Section 201–2, cls. (4)(i) to (4)(xvii) of this title.

■ The standard to be applied by the court in an action for trademark infringement and unfair competition is the likelihood of confusion as regards the origin or source of the products in question that would occur through the continued use by the defendant of the defendants' trademark. *Schmid Laboratories v. Youngs Drug Products*, 482 F.Supp. 14, 17 (D.N.J. 1979); *Alfred Dunhill of London, Inc. v. Kasser Distillers Products Corp.*, 350 F.Supp. 1341, 1380 (E.D.Pa.1972), *aff'd mem.*, 480 F.2d 917 (3d Cir. 1973). This likelihood of confusion is determined by viewing the two marks in question as they would appear to the ordinary purchaser of the product involved. *Id., see, Dresser Industries, Inc. v. Heraeus Engelhard Vacuum, Inc.*, 395 F.2d 457, 462 (3d Cir.), *cert. denied*, 393 U.S. 934, 89 S.Ct. 293, 21 L.Ed.2d 270 (1968). Likelihood of confusion exists whenever consumers viewing the mark would probably assume that the product or service it represents is associated with the source of a different product or service identified by a similar mark. *Scott Paper Co. v. Scott's Liquid Gold, Inc.*, 589 F.2d 1225, 1229 (3d Cir. 1978).

■ The factors to be considered in determining likelihood of confusion are:

(a) The degree of resemblance between the designation and the other's trade name, trademark or certification mark in

(i) appearance;

(ii) pronunciation of the words involved;

(iii) translation of the words involved;

(iv) verbal translations of the pictures or designs involved;

(v) suggestiveness, connotation or meaning of the actor's designation and the trade name, trademark or certification mark involved;

(b) the intent of the actor in adopting and using the designation;

(c) the similarity of circumstances and conditions surrounding the purchase of the goods or services involved;

(d) the degree of care likely to be exercised by purchasers of the goods or services involved.

*Schmid Laboratories v. Youngs Drug*, 482 F.Supp. at 17; *Motor Master Products Corp. v. Motor Masters Warehouse, Inc.*, 446 F.Supp. 165, 168 (E.D.Pa.1978); *Restatement of Torts 2d*, § 729. No single factor may be taken as controlling, and all pertinent factors must be considered to determine the likelihood of confusion, mistake or deception. *Motor Master Products Corp. v. Motor Masters Warehouse, Inc.*, 446 F.Supp. at 168.

■ After careful consideration of each of these factors, we conclude that there is indeed a likelihood of confusion as regards the origin or source of defendants' solicitations which would occur as a result of continued use by the defendants of "Pan American Express International", "Pan American Express", and "PANAMEX".[6]

The degree of resemblance between "Pan American Express" and "PANAMEX" on

---

2. Section 201–3.1 of this title.

73 PA. § 201–2 provides in part:

(4) "Unfair methods of competition" and "unfair or deceptive acts or practices" mean any one or more of the following:

(i) Passing off goods or services as those of another;

(ii) Causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods or services;

(iii) Causing likelihood of confusion or of misunderstanding as to affiliation, connection or association with, or certification by, another;

.    .    .    .    .

(xvii) Engaging in any other fraudulent conduct which creates a likelihood of confusion or of misunderstanding.

6. Defendants have asserted that they are no longer making use of the term Pan American Express International, but that matter is disputed by plaintiff. In order to dispel any possible confusion, as well as to fully protect plaintiff's rights, we shall therefore address ourselves to the defendants' continued use of any term containing the words "American Express", as well as of the acronym "PANAMEX". Hereafter, all reference to the term "Pan American Express" is meant to include as well the term "Pan American Express International" and any other term which includes the words "American Express".

the one hand, and "American Express" and "AMEX" on the other, is striking. There is a clear similarity in appearance between these terms, as both plaintiff and defendants employ block lettering, and defendants' terms differ from plaintiff's only by the addition of the prefix "Pan". Similarly, pronunciation of plaintiff's and defendants' terms is identical except for the insertion in the defendants' terms of the single syllable "Pan".

Translation of words and verbal translations of pictures and designs are not relevant to this case. Turning to the next factor, we find that the suggestiveness and connotation of the defendants' terms are such that their use is likely to impart in the mind of customers and recipients of defendants' direct mail solicitation materials the impression that the materials originate from or are in some way connected with or sponsored by plaintiff. The suggestiveness which leads to such confusion is evidenced by the realization that both plaintiff and defendants are offering products and services which are themselves quite similar, at least upon first glance. Moreover, defendants issue to customers a gold identification card, inscribed with the name "PANAMEX" and bearing a stylized world globe. Although this card is readily distinguishable in appearance and purpose from the plaintiff's American Express Gold Card, the similarity in appearance and purpose between them is nonetheless sufficient to further the likelihood of confusion on the part of recipients of defendants' gold identification card as to the true identity of the issuer of the card and source of the solicitation materials.

In addition, defendants use a "PANAGRAM" to communicate with customers. That term is highly suggestive of a connection between plaintiff and defendants inasmuch as plaintiff communicates with its card holders via an "AMEXGRAM".

The evidence does not lead us to conclude that defendants' intent in adopting "Pan American Express" and "PANAMEX" was to deliberately create confusion in the mind of the public as regards the difference between the defendant company and the

American Express Company, or to take advantage of the goodwill associated with plaintiff and its marks. Nevertheless, we express concern over defendants' choice, from among the infinite variety of names and terms which could have been chosen as company names and service marks, of terms which so closely resemble the long established, registered marks of plaintiff. We are concerned as well by the falsity of the statement on defendants' "PANAGRAM" correspondence that "PANAMEX is a registered trademark of Pan American Express International, Ltd."

The similarity in the circumstances and conditions surrounding the purchase of mail order precious coins and metals offered by the plaintiff and by the defendants is readily apparent. Not only do both use the same means, the mail, to make their solicitations and apprise potential customers of their products and services, but both have also used the same mailing lists. Thus, for example, a prior recipient of a direct mail solicitation for precious coins from plaintiff may well believe that a solicitation subsequently received from defendants is but another such offering from the American Express Company, or from one of its subsidiaries. At any rate, confusion as to the true origin of defendants' solicitation is likely in view of the similarity in name.

Although there is no evidence directly dealing with the question of the degree of care likely to be exercised by purchasers of precious coins and metals solicited by direct mail, we note that both plaintiff and defendants have used identical mailing lists to solicit customers. Even assuming that recipients of defendants' mailings, as potential purchasers of precious metals, are knowledgeable, sophisticated and experienced in such transactions, there is no reason to think that they are likewise cognizant of the true origin of the solicitation materials, so that confusion in that regard is indeed likely.

Finally, we reject defendants' argument that in connection with its offerings of precious metal coins plaintiff has never used the mark "AMEX", but rather has only

used the name American Express Company. In considering the American Stock Exchange, Inc.'s opposition to the American Express Company's registration of the service mark "AMEX" for travel, banking, insurance, and financial services, the Trademark Trial and Appeal Board stated that "[w]here the public has come to associate a term with a particular company and/or its goods or services as a result, for example, of use of the term in the trade and by the news media, that company has a protectable property right in the term even if the company itself has made no use of the term." *American Stock Exchange, Inc. v. American Express Company*, 207 U.S.P.Q. 356 (TTAB 1980). Here, not only has the public surely come to associate "AMEX" with plaintiff and the services it offers, as evidenced by use of that term by newspapers and magazines, but plaintiff has in fact itself used "AMEX" in its own publications and correspondence. At any rate, so long as "AMEX" is identified in the public mind as a service mark for the American Express Company, plaintiff need not specifically use "AMEX" in its solicitations in order for the use of "PANAMEX" by defendants in its solicitations to be a source of likely confusion.

### III

In accordance with the above opinion, the defendants are hereby permanently enjoined from using "Pan American Express International", "Pan American Express", "PANAMEX", or any words, names or terms containing "American Express" or "AMEX". Defendants are further permanently enjoined from representing or holding out in any manner whatsoever that defendants have any connection, association or affiliation with, or sponsorship or approval of plaintiff.

Plaintiff's request for damages is denied, as no evidence sufficient to warrant an award of damages has been presented to the court.

The above constitutes the court's findings of fact and conclusions of law in accordance with Rule 52(a) of the Federal Rules of Civil Procedure.