AMERICAN DIABETES ASSOCIATION, INC. and American Diabetes Association Greater Philadelphia Affiliate, Inc.

v.

NATIONAL DIABETES ASSOCIATION, Dennis J. Connor and Suzanne F. Mottola.

Civ. A. No. 81–0114.

United States District Court, E. D. Pennsylvania.

July 2, 1981.

**18**

Manny D. Pokotilow, Philadelphia, Pa., for plaintiffs.

Malcolm H. Waldron, Jr., Philadelphia, Pa., for defendants.

## FINDINGS

McGLYNN, District Judge.

■ This action for trademark infringement and unfair competition, arising under common law and section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), respectively, is presently before the Court on plaintiffs' motion for preliminary injunction. The basic question presented is whether defendants' use of the name National Diabetes Association in solicitations for contributions to its charitable organization violates the Lanham Act and infringes upon a trademark of plaintiffs,[1] American Diabetes Association, Inc. and American Diabetes Association Greater Philadelphia Affiliate, Inc. (collectively the American Diabetes Association). For the reasons discussed below, plaintiffs' motion for preliminary injunction is granted.

Plaintiffs, as the leading charitable organizations in the diabetes field, have been engaged in raising money to fund research, render services, and inform the public for forty years under the name American Diabetes Association. Defendant Dennis J. Connor is part owner of a weight reduction organization known as Weight Masters, located in Philadelphia, Pennsylvania. In the fall of 1979 Connor requested from John Graham, the Executive Director of the American Diabetes Association Greater Philadelphia Affiliate, Inc., an endorsement of the Weight Masters' program by the American Diabetes Association. In return, Weight Masters would pay to the American Diabetes Association twenty dollars for each Weight Masters program that was sold as a result of using the American Diabetes Association endorsement. Through Graham, the American Diabetes Association informed Connor that, because Weight Masters was a commercial enterprise, the American Diabetes Association would not endorse it.

In the summer of 1980, Connor and his daughter, defendant Suzanne F. Mottola, formed the defendant National Diabetes Association. In September of 1980, defendants applied for registration of the National Diabetes Association as a charitable organization under the regulations of the Commonwealth of Pennsylvania. Pending the outcome of the application for registration, defendants began to solicit funds by telephone under the designation National Diabetes Association. To date, defendants have only solicited funds and have not provided any services with those funds.

Beginning in October of 1980, plaintiff began to receive daily complaints from people who had confused solicitations by the National Diabetes Association with those by the American Diabetes Association. Plaintiffs then instituted the present action seeking a permanent injunction enjoining defendants from using the designation National Diabetes Association in connection with the solicitation of funds and treble damages for harm sustained as a result of loss of goodwill and other consequences of defendants' acts.

At a hearing on plaintiffs' motion for preliminary injunction held on March 13, 1981, defendants agreed to cease all solicitations pending a ruling on defendants' appli-

---

1. Service mark infringement and trademark infringement are governed by identical standards. *Boston Professional Hockey Association, Inc. v. Dallas Cap & Emblem Manufacturer, Inc.*, 510 F.2d 1004 (5th Cir. 1975), *cert. den.*, 423 U.S. 868, 96 S.Ct. 132, 46 L.Ed.2d 98 (1975), *reh. den.*, 423 U.S. 991, 96 S.Ct. 408, 46 L.Ed.2d 312 (1975). For convenience the term trademark or mark is used in this opinion.

cation for registration as a charitable organization in the Commonwealth of Pennsylvania. The National Diabetes Association was so registered in May of 1981, and the hearing was reconvened on June 4, 1981.

A plaintiff seeking a preliminary injunction must show that: 1) irreparable harm will result if the relief requested is not granted to maintain the status quo until final adjudication and 2) there exists a reasonable probability of success on the merits. *Continental Group, Inc. v. Amoco Chemical Group*, 614 F.2d 351 (3d Cir. 1980). In addition, the Court must weigh the possibility of harm to the opposing party, and when relevant, the harm to the public. *Id.*

LIKELIHOOD OF SUCCESS

As a preliminary determination, the Court must decide whether the designation American Diabetes Association is entitled to trademark protection. Under common law and the Lanham Act, a term for which trademark protection is claimed will fit within the following classifications: 1) generic or common descriptive, 2) merely descriptive, 3) suggestive, and 4) arbitrary or fanciful. *See Miller Brewing Co. v. G. Heilemen Brewing Co.*, 541 F.2d 75 (7th Cir. 1977), *cert. denied*, 434 U.S. 1025, 98 S.Ct. 751, 54 L.Ed.2d 772 (1978); *Walker-Davis Publications, Inc. v. Penton/IPC, Inc.*, 509 F.Supp. 430 (E.D.Pa.1981).

A generic or commonly descriptive term is one which is commonly used to describe the goods or services. These cannot become trademarks under any circumstances because appropriation of such generally descriptive terms would grant the owner of the mark a monopoly and prevent a competitor from adequately describing his goods or services. A merely descriptive term specifically describes a characteristic of the service. It can, by acquiring customer recognition and secondary meaning, achieve protectible status as a valid trademark. Suggestive and fanciful terms are those which are inherently distinctive because they are so far removed from mere descriptions of the goods or services. Both can be protected without proof of a secondary meaning.

The designation American Diabetes Association is not a formally registered mark, nor is it inherently distinctive. Therefore, plaintiffs are required to prove that the mark can be protected and that it has achieved a secondary meaning. The term American is geographically descriptive of the market within which the American Diabetes Association functions. Although no one is entitled to claim an exclusive right to a geographical term in common use, one who has created a secondary meaning for a geographical word may challenge the trademark use thereof by others.

Secondary meaning is buyer association. *John Wright, Inc. v. Casper Corp.*, 419 F.Supp. 292, 318 (E.D.Pa.1976), *rev'd in part on other grounds sub nom. Donsco, Inc. v. Casper Corp.*, 587 F.2d 602 (3d Cir. 1978). The question is whether the relevant class of contributors associates the American Diabetes Association with the charitable services it performs. In determining whether the designation has achieved a secondary meaning, courts have considered: 1) the length and manner of its use, 2) the nature and extent of advertising and promotion, and 3) other efforts at creating a conscious connection in the public's mind between the designation and the service. *Id.*

The plaintiffs have been using the American Diabetes Association designation for forty years. At the hearing they showed a long history of advertising in magazines and on television as well as extensive promotional efforts aimed at creating a nexus in the public's mind between the American Diabetes Association and the services they provide. These factors indicate that there is a reasonable likelihood that plaintiffs will be able to show that their designation has achieved secondary meaning and is therefore legally protectible.

For an injunction to issue in an action for trademark infringement and unfair competition, the plaintiff, after establishing that its name is entitled to trademark protection, must show that a likelihood of confusion will exist as to the source

of the goods or services if the defendant continues to use defendant's designation. *American Express Co. v. Pan American Express*, 509 F.Supp. 348 (E.D.Pa.1981). A showing of actual confusion, although probative, is not necessary.

Likelihood of confusion exists whenever buyers who encounter the mark are likely to assume that the product or service is associated with the source of a different product or service. *Scott Paper Co. v. Scotts Liquid Gold, Inc.*, 589 F.2d 1225 (3d Cir. 1978). The factors courts consider in determining the likelihood of confusion are:

(1) the degree of resemblance between the trademark and the other's designation in: 1) appearance, 2) pronunciation, 3) translation of the words involved, and 4) suggestiveness, connotation or meaning;

(2) intent of the actor in adopting and using the designation;

(3) the similarity of the circumstances and conditions surrounding the purchase of the goods and services;

(4) the degree of care likely to be exercised by purchasers.

*American Express Co. v. Pan American Express*, 509 F.Supp. 348 (E.D.Pa.1981); Restatement (Second) of Torts § 729 (1976). No single factor may be taken as controlling, and all relevant factors must be considered. *Motor Master Products Corp. v. Motor Masters Warehouse, Inc.*, 446 F.Supp. 165 (E.D.Pa.1978).

After carefully weighing all relevant factors, I am persuaded that plaintiffs have met their burden of establishing a likelihood of confusion in a manner sufficient to warrant the issuing of a preliminary injunction.

The designations must be considered as a whole in deciding the likelihood of confusion since it is their overall impression that may lead to confusion. Save the substitution of "National" for "American", the titles are the same. To that extent, they resemble one another in appearance and pronunciation. Moreover, even though the terms national and american do not sound or look alike, they may cause confusion because they convey the same meaning or evoke the same mental image. Webster's Third New International Dictionary (1961) defines american as "belonging to, inhabiting, coming from America." It defines national as "of or relating to a nation." Both appellations evoke the image of a diabetes association whose scope encompasses the entire United States.

Plaintiffs offered little evidence concerning defendants' intent in adopting the name National Diabetes Association. It is pertinent, however, that Connor formed the National Diabetes Association immediately following the American Diabetes Association's rejection of a proposed endorsement for Weight Masters, which Connor owned in part. This may not be sufficient to demonstrate conclusively that Connor had an intent to deceive or mislead the public in forming the defendant corporation. But it does show that Connor was aware of the goodwill and reputation of the American Diabetes Association and thus it is probative of an intent to benefit from the resemblance of defendant corporation's name to that of plaintiffs'.

The last two factors to be considered are intertwined, gauging the likelihood of confusion due to the similarity of circumstances in which the services compete and the degree of care a potential donor is likely to show in selecting the organization to which he will contribute. In other words, these factors attempt to recreate the marketplace.

Both charities solicit donations to fund services for diabetics. Although their methods differ in some respects—the National Diabetes Association solicits by telephone and the American Diabetes Association does not—the organizations are essentially in direct competition in the same market, *i.e.*, the Philadelphia area. Any differences in the means of solicitation are not likely to reduce confusion since the public cannot be expected to know that one organization solicits by one means and another does not.

The test for the degree of care exercised is whether "an ordinary purchaser using ordinary care and caution is likely to be confused." *John Wright, Inc. v. Casper Corp.*, 419 F.Supp. 292, 321 (E.D.Pa.1976); *see also McLean v. Fleming*, 96 U.S. 245, 24 L.Ed. 828 (1878); *Heinz v. Lutz*, 146 Pa. 592, 23 A. 314 (1892). Thus the legal standard of care "should not be so high that the public is required to dissect and analyze trademarks in order to avoid confusion." McCarthy, Trademarks and Unfair Competition § 23:27, at p. 91 (1973). Persons wishing to donate are not likely to analyze in depth the credentials of the charity. Rather, they are more likely to be generally familiar with the works of a charity for a cause they support and, when solicited, will contribute to such a cause. Under these circumstances, potential contributors may easily confuse two diabetic charities that resemble one another in name and function.

As further evidence that confusion is likely to result in the marketplace, plaintiffs introduced evidence of actual confusion. John Graham, the Executive Director of the American Diabetes Association Greater Philadelphia Affiliate, Inc., testified that for a thirty to forty-five day period his office received four or five daily complaints from people who had confused solicitations by the National Diabetes Association with those by the American Diabetes Association. Plaintiffs introduced evidence of telephone calls by several complainants but did not call a complainant to testify. Proof of actual confusion, of course, does much to establish that, if defendants continue to use their designation in soliciting, a likelihood of confusion will exist.

IRREPARABLE HARM

The imminent harm plaintiffs will suffer if defendants are not enjoined is the loss of control of their reputation and goodwill, which plaintiffs have established over a forty year period. This harm is, by nature, inadequately remedied by legal means. *Chips 'N Twigs, Inc. v. Chip-Chip, Ltd.*, 414 F.Supp. 1003, 1020 (E.D.Pa.1976). Plaintiffs may also suffer the loss of potential donations because people may mistakenly donate to the defendant charity and may refrain from donating to any diabetes charity in the future because of unhappy results in dealing with the National Diabetes Association. Although these injuries are more susceptible to remedy by monetary awards, they are notoriously difficult to prove.

HARM TO OTHERS

There are several competing policy interests active in shaping the law of trademark infringement. One of these, plaintiffs' concern that the fruits of their labor not be misappropriated, has been discussed in some detail. The basic policy of trademark law, however, is the protection of the public from confusion. In this case, the public will benefit from a preliminary injunction because they will be protected from misdirecting any funds, and other harms, as a result of becoming confused between the two charities.

Against these interests must be weighed the concern for creating a healthy competition wherever possible in our economy and the harm which will accrue to defendants in particular. The only perceivable harm to defendants is that the National Diabetes Association will be delayed in its fund-raising activities until final adjudication of this matter. As to the possibility of a preliminary injunction throttling a healthy spirit of competition in this case, it need only be said that, whenever competing policy interests meet, inevitably the lesser must be compromised.

For the foregoing reasons, a preliminary injunction enjoining defendants from soliciting funds for any purposes under the name National Diabetes Association will be entered.