**BLINDED VETERANS ASSOCIATION, Plaintiff,**

v.

**BLINDED AMERICAN VETERANS FOUNDATION, Defendant.**

**Civ. A. No. 86–1563.**

United States District Court, District of Columbia.

March 8, 1988.

---

Irving R.M. Panzer, Washington, D.C., for plaintiff.

Steven E. Lipman, Washington, D.C., for defendant.

## DECISION AND ORDER

JACKSON, District Judge.

Plaintiff Blinded Veterans Association ("BVA") is a non-profit corporation chartered by an act of Congress in 1958. It is a reincarnation of a New York corporation of the same name dating from 1947, which was itself formed from an unincorporated association founded two years earlier to give aid and comfort to former U.S. service personnel originally sighted, then blinded as adults (although not necessarily as a consequence of military service). Defendant Blinded American Veterans Foundation ("BAVF") is a District of Columbia non-profit corporation formed in September, 1985, by three individuals, all former officials of BVA, with the purpose of assisting veterans with "sensory disabilities such as visual impairment, hearing impairment, speech impediments, etc." Both organizations look to the charitable public for financial support.

The BVA sues the BAVF for trademark infringement under 15 U.S.C. § 1125 and 28 U.S.C. § 1338(a) to enjoin its use of its current name, the initials "BAV," and the use of the words "blinded" and "veterans" in conjunction with one another in such name as it may hereafter choose as an alternative, claiming they are confusingly similar to its own. Upon the following facts, as found by the Court in accordance with Fed.R.Civ.P. 52(a) upon trial without a jury, the Court concludes, for the reasons set forth, that judgment must be given for plaintiff and an injunction issued as prayed.

### I.

BVA originated with a group of blinded U.S. World War II veterans convalescing at a U.S. Army hospital in Avon, Connecticut, in March of 1945. It held its first "convention" in New York City in 1946, incorporated and opened an office there in 1947 with a private grant of money, and has since supported itself in part with modest dues income, and contracts with the U.S. Department of Labor and Veterans' Administration to assist blinded veterans with rehabilitation and employment. It is, however,

primarily dependent upon contributions made in response to direct mail solicitations which account at the moment for nearly 70 percent of its income. It presently has a membership of approximately 6,500, employs 16 staff members in its Washington, D.C., headquarters and eight "field representatives," and operates on an annual budget of slightly less than $1.5 million. It is audited annually, and the report is sent to the U.S. Comptroller General.

Since its formation BVA has regularly published a newsletter known as the "BVA Bulletin," containing information of interest to sightless former servicepeople, which it mails to as many of them as the Veterans' Administration makes known to it (about 20,000 at present), whether or not they are members of BVA. Administratively it divides its membership into 42 chapters, called "regional groups," clustered into six "districts." At its annual national convention the delegates elect "directors" from each district who constitute the BVA's National Board of Directors.

In addition to its direct services to blinded veterans across the country, which range from arranging for rehabilitative services and job training and placement to advising on claims for government benefits, BVA engages in activities typical of such special interest groups. It testifies before Congress, joins in litigation likely to benefit its constituency, and sponsors events intended to elevate the plight of blinded military personnel in the public consciousness. BVA makes public appeals for funds by mailing more than four million solicitations per year, most of them "prospect" mailings going to strangers, with the remainder being sent to names on a "house" list of former contributors from which BVA experiences an annual attrition of 20–30 percent.

Other than an unspecified number of "volunteers," BAVF, BVA's nascent competitor, has no "members" as such, only its three officers-directors-incorporators (who hold full time jobs elsewhere), all of whom at one time held responsible positions with BVA during the mid–1970's to as late as 1982. All three are themselves blinded veterans.

BAVF first made its presence known to BVA at the time of the 1986 Combined Federal Campaign ("CFC"). Organized too late in the year to be officially recognized as a CFC beneficiary in 1985, BAVF applied in 1986 to 522 local CFC campaign organizations who listed it, along with (and alphabetically above) BVA, as a prospective recipient of Campaign funds. In 1986, its president estimated, BAVF took in some $35,000–$40,000, half of which came from CFC pledges, the balance from "corporate" contributions. It has no overhead; its "office" is free "desk space" in a local consulting firm's office, and it has no staff. At the time of trial it had a balance of about $10,000 in a bank, the name of which the president could not then remember.

BAVF has held Flag Day celebrations. It presented and publicized awards to members of Congress and journalists who had shown an interest in handicapped veterans. It commissioned a recording of a reading of the U.S. Constitution (at a cost of $.56 each) which it mailed (postage free) to 17,-500 blinded veterans across the country. And it found employment for three such veterans, and presented a gift of some "trial lenses" to the Veterans' Administration. Its future plans include the development of a better "folding cane," and an "outreach" program to veterans who are blind in one eye and afflicted with diabetes. It aspires someday to build a rehabilitation center.

Although its charter declares its purpose to be to assist veterans with any "sensory disabilities," BAVF's efforts, so far, have been directed exclusively towards those who are blind. Its president insists that it "never occurred" to its founders that BAVF's name was similar to the plaintiff's. They selected it, he says, because he and his colleagues are what they are, viz., "blinded American veterans." Nor was there any intention, he says, to compete with BVA; they had hoped that BAVF and BVA could "work together" on behalf of blinded veterans.

The Court finds otherwise. It finds that BAVF was deliberately named, and pres-

ently refuses to change its name, to enable it to capitalize upon the association in the mind of the charitable public between the words "blinded" and "veterans" (and the understandable sympathy they engender), and, thus, to compete with plaintiff for the funds of those inclined to give to such a cause.[1]

## II.

■ Defendant contends that the term "blinded veterans" is a "generic" term—a class of persons, nothing more—and, thus, incapable of acquiring trademark significance. *See* 1 McCarthy, *Trademarks and Unfair Competition,* § 12.1 (2d Ed.1984); *Abercrombie & Fitch Co. v. Hunting World, Inc.,* 537 F.2d 4, 9 (2d Cir.1976). Were the words used separately, e.g., "the blinded persons association" or "the veterans association," the characterization might be apt, but, in conjunction with one another, the Court concludes, they are, at the least, a "descriptive" term in trademark parlance, which is entitled to protection against infringement if it has, over time, acquired in the mind of the relevant public a "secondary meaning," i.e., "it has become distinctive of the [plaintiff's] goods in commerce." *San Francisco Arts & Athletics, Inc. v. United States Olympic Committee,* —— U.S. ——, 107 S.Ct. 2971, 2980, 97 L.Ed.2d 427 (1987). *See American Diabetes Association v. National Diabetes Association,* 533 F.Supp. 16, 19 (E.D. Pa.1981), *aff'd mem.* 681 F.2d 804 (3rd Cir.1982).

Plaintiff BVA has, from its inception, been known by no other name. It has employed its initials as a logo, on its official publication and elsewhere, for the same period. And it has continuously promoted itself, without hiatus, as the preeminent private voluntary proponent of the interests of blinded former U.S. service personnel, and its "product," i.e., the services it can render to and for them, for such a length of time, and at such effort and expense, that the Court concludes the name "Blinded Veterans Association," and the initials "BVA," have, indeed, acquired a secondary meaning for which BVA is entitled to protection against all competitors employing a name which is confusingly similar. The Court is reinforced in that conclusion by both the defendant's startling success in its maiden fundraising venture with no history of significant accomplishment, and by the tenacity with which it seeks to preserve its right to use the name it has chosen for itself.

Defendant has shown that there have been other organizations in the past, and at least one that is extant today, whose constituencies were or are blinded military veterans and whose names proclaimed it.[2] Following World War I there appeared "The United States Blinded Veterans of the World War." There is (or was) an "American Friends of Scottish War Blinded." And the Disabled American Veterans ("DAV") presently maintains a subdivision known as "The Blind Veterans National Chapter of the Disabled American Veterans," which dates from 1925 and still meets annually in reunion, has regional "chapters" which hold monthly meetings, and, until 1985, regularly published a column known as the "White Cane" in the DAV's magazine.

None of those organizations, defendant submits, has been asked by plaintiff to desist from using their organizational names. The explanation, according to BVA, is that none are apparently in competition with it for charitable gifts. The for-

1. The Court disbelieves the testimony of BAVF's president, its only witness to testify to the circumstances of its birth. Although BAVF professes to be concerned with veterans' "sensory disabilities" generally, its founders selected a name which adverts only to blindness, and refuse to adopt another which does not also include the words "blinded" and "veterans." It initially adopted a logo (since abandoned) which employed the initials "BAV" in large type, followed by the word "foundation" in small-type subscript. And another of defendant's founders

testified on deposition that the similarity of names had occurred to all three of them; they simply didn't consider it significant in choosing their own.

2. There are also, according to defendant, some 35 organizations with the word "blind" in their names, and 59 using the word "veteran." The initials "BVA" are used to refer as well to the Veterans' Administration's Board of Veterans' Appeals.

mer two are apparently moribund, and the DAV's Blind Veterans National Chapter is prohibited by the parent organization from raising funds in its own name.

### III.

The rivalry between BVA and BAVF is too recent for there to be readily available data on the extent to which the contributing public itself has actually been mislead by the resemblance of their names. Plaintiff nevertheless presented evidence that local CFC authorities were confusing them in passing upon their applications to be listed as beneficiary organizations of the 1986 campaign, and others had remitted contributions designated for BVA to the wrong recipient. It is, however, the likelihood of confusion, whether or not actual confusion can be shown, which determines the right to protective relief for a victim of infringement, *Foxtrap, Inc. v. Foxtrap, Inc.*, 671 F.2d 636, 639 (D.C.Cir.1982), and plaintiff demonstrated convincingly that its name is easily misapprehended by intending benefactors even when no alleged imposter is on the scene.[3] When defendant's name is offered as an alternative, the potential for confusion approaches totality.

Plaintiff presented testimony from a professor of English and linguistics at the University of Maryland detailing three experiments she conducted with groups of between 30 and 58 volunteer college students to test their ability to distinguish between similar organizational names after reading a brief descriptive text. The names of plaintiff and defendant appeared with others (the others having, however, other distinctive words in their titles) on two of the tests; on the third they appeared alone. The results of all three tests demonstrated that a substantial majority of the subjects either did not perceive a distinction between BVA and BAVF, or so garbled their names as to create a genuine doubt as to which they had in mind, either informationally or in making a hypothetical gift.

The Court credits the test results. Although not a "market survey," as the defendant insists is the only proper way to determine product confusion in trademark litigation, the tests were both relevant to and probative of the perceptions of people of above-average intelligence of an identity between plaintiff and defendant which the plaintiff wants to dispel, and the defendant to perpetuate. Even if a "market survey" were practicable in the circumstances, which is doubtful, it would add little to the commonsense inference (which the test results confirm) that ordinary contributors believe one organization soliciting for sightless veterans is as good as another, because the ultimate beneficiaries are ostensibly the same.

For the foregoing reasons, therefore, the Court will enter judgment for plaintiff, and it is, this 8th day of March, 1988,

ORDERED, that defendant Blinded American Veterans Foundation is permanently restrained and enjoined from the use of its name aforesaid, from the use of the initials "BAV" or "BAVF," and from the use of any name in which the words "veterans," and "blind" or "blinded," are employed as noun and modifying adjective, respectively, from and after the ninetieth (90th) day following entry of this Order; and it is

FURTHER ORDERED, that the foregoing injunction is stayed pending the outcome of a timely appeal herefrom.

---

**3.** Contributions and bequests, shown by circumstances to have been clearly intended for plaintiff, and no one else, have nevertheless been made payable to "Blind War Veterans;" "Blind Vets of America;" "Blinded Veterans;" "The Blind Veterans Association;" "American Blinded War Veterans;" "Blinded American Veterans;" "Veterans Association for the Blind, Inc.;" "American Blinded Veterans Association;" and "National Blinded Veterans."

Two courts have made *cy pres* constructions of bequests to the "Blind Veterans of World War II" and for "the aid of blind or near blind U.S. war veterans" as being properly payable to plaintiff. Both decisions antedated the appearance of the defendant.

On occasion, even the Veterans Administration and the U.S. Department of Labor have misaddressed correspondence to plaintiff under another name.